1  DAVID H. KRAMER, State Bar No. 168452
   JACOB VELTMAN, State Bar No. 247597
2  SARA E. ROWE, State Bar No. 295353
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
5  Facsimile:  (650) 565-5100
   Email:  dkramer@wsgr.com
6  Email:  jveltman@wsgr.com
   Email:  srowe@wsgr.com
7
   COLLEEN BAL, State Bar No. 167637
8  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
9  One Market Plaza
   Spear Tower, Suite 3300
10 San Francisco, CA 94105-1126
   Telephone:  (415) 947-2000
11 Facsimile:  (415) 947-2099
   Email:  cbal@wsgr.com
12
   *Attorneys for Defendant Square, Inc.*
13

14                 UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

17 ROBERT E. WHITE,                     )  Case No.  3:15-cv-04539-JST
                                        )
18         Plaintiff,                   )  **SQUARE, INC.'S NOTICE OF**
                                        )  **MOTION AND MOTION TO**
19      v.                              )  **DISMISS FIRST AMENDED**
                                        )  **COMPLAINT; MEMORANDUM OF**
20 SQUARE, Inc., a Delaware corporation,)  **POINTS AND AUTHORITIES**
                                        )
21         Defendant.                   )  Date:  March 10, 2016
                                        )  Time: 2:00 pm
22                                      )  Courtroom: 9 – 19th Floor
                                        )  Before: Hon. Jon S. Tigar
23                                      )
                                        )
24 _____  )

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2016, at 2:00 pm, before the Honorable Jon. S. Tigar of the United States District Court for the Northern District of California, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, Defendant Square, Inc. will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the First Amended Complaint ("FAC") filed by Plaintiff Robert E. White.

RELIEF SOUGHT: Square seeks dismissal of Plaintiff's FAC with prejudice, under Fed. R. Civ. P. 12(b)(6), as Plaintiff has not demonstrated and cannot demonstrate he has suffered injury sufficient to state a claim under the Unruh Act. This motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Proposed Order; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before this Court.

## STATEMENT OF THE ISSUE TO BE DECIDED

In light of Plaintiff's failure to allege facts sufficient to show standing under the Unruh Act, should his claim be dismissed?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is but one in a series brought by the plaintiff's law firm to manufacture claims under the Unruh Act where no such claim lies. The Unruh Act, which protects against arbitrary discrimination based on personal characteristics, states that a "person aggrieved" by alleged discriminatory conduct may file an action in court. An unbroken line of cases interpreting the Unruh Act makes plain that it applies only to persons who actually attempt to avail themselves of a defendant's goods or services and are denied their rights in the process. It does not apply to bystanders or to persons who hypothetically fall within the scope of an alleged discriminatory policy.

In the first case, *shierkatz v. Square*, the plaintiff bankruptcy law firm entered an agreement with Defendant Square, Inc. ("Square") to use Square's credit card processing

1   services.  When Square learned that shierkatz was violating the agreement, it terminated

2   shierkatz's account.  shierkatz sued Square under the Unruh Act, claiming its termination

3   constituted unlawful discrimination.  This Court sent the case to arbitration pursuant to the terms

4   of the Square agreement.  *See shierkatz RLLP v. Square, Inc.*, No. 3:15-cv-02202-JST, 2015 U.S.

5   Dist. LEXIS 169628 (N.D. Cal. Dec. 17, 2015).

6         In the hopes of avoiding that same result, shierkatz's counsel found another bankruptcy

7   lawyer to bring this action who was not subject to Square's arbitration agreement.  Indeed, this

8   second bankruptcy lawyer, Plaintiff Robert White, had never attempted to use Square's services,

9   and had not even expressed interest in doing so.  Plaintiff White "is a personal friend and

10  business colleague of Jeremy Katz . . . a partner in shierkatz, RLLP."  FAC ¶ 8.  According to

11  Plaintiff White, after he heard about the *shierkatz* case, he decided to seek statutory damages

12  from Square too, and claims he may do so on behalf of an ill-defined putative class.

13        By enlisting a plaintiff who has never interacted with Square, plaintiff's law firm strains

14  to avoid Square's arbitration agreement.  But these machinations give rise to a more fundamental

15  problem:  because Plaintiff White never sought to use Square's services, much less suffered

16  discrimination by Square, he has not suffered an injury that the Unruh Act even theoretically

17  redresses.  Plaintiff White therefore lacks standing under the Unruh Act, and his case should be

18  dismissed for failure to plead facts sufficient to state a claim.  And because Plaintiff White

19  cannot amend his complaint to allege that he ever engaged with Square, his complaint should be

20  dismissed with prejudice.

21  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

22        This case is but one in a progression of cases in which plaintiff's counsel seeks to avoid

23  arbitration but still establish Unruh Act standing.  None succeeds.

24        In May 2015, nonparty shierkatz LLP ("shierkatz") filed the first of these putative class

25  actions against Square in this Court.  *See shierkatz RLLP v. Square, Inc.*, No. 3:15-cv-02202-

26  JST.  The current action was related to the *shierkatz* action on October 7, 2015.  Dkt. 11.  On

27  December 17, 2015, this Court sent the *sheirkatz* case to arbitration based on the arbitration

28

1    clause to which shierkatz agreed when it registered for the Square service.  *See shierkatz RLLP v.*

2    *Square, Inc.*, No. 3:15-cv-02202-JST, 2015 U.S. Dist. LEXIS 169628 (N.D. Cal. Dec. 17,

3    2015).[1]

4              On the same day that plaintiff's counsel filed a Second Amended Complaint in the

5    *shierkatz* action, the same counsel filed the current action on behalf of Plaintiff White.  This

6    time, counsel avers that White has no relationship with Square at all.  According to the

7    complaint, White has never held a Square account.  FAC ¶¶ 9.  He is a personal friend and

8    business colleague with one of the two partners of the shierkatz law firm.  *Id.* ¶¶1, 8.  White

9    claims that he "read the District Court's file" in the *shierkatz* action and learned that the Square

10   Seller Agreement prohibits payments in connection with certain business activities.  From that,

11   he was "dissuaded" from seeking to register for a Square account.  *Id.* ¶ 9.  He does not allege

12   that he ever used the Square website or mobile application, much less that ever he took steps to

13   register for a Square account.  He does not allege that he ever wanted a Square account or has

14   any use for one.  To the contrary, the FAC makes clear that his sole interest in Square is to

15   litigate this action.  Claiming he suffered discrimination, White asserts a single cause of action

16   for statutory damages under the Unruh Act.

17             Shortly after filing this case, plaintiff's counsel filed an identical Unruh Act action for

18   White against another payment processing service, Stripe, Inc.  *See White v. Stripe, Inc.*, No.

19   4:15-cv-06236-DMR (N.D. Cal.).  The same day, the same counsel filed a fourth action, against

20   Square, Stripe and other payment processing services, asserting a single Unruh Act claim on

21   behalf of a smoke shop that sells, among other things, drug paraphernalia and pornographic

22

23   _____

     [1] shierkatz, like all Square account holders, agreed to the Square Seller Agreement during the
24   online account registration process as a condition of using the Square service.  That agreement
     requires disputes concerning the Seller Agreement to be resolved through individual (*i.e.*, non-
25   class) binding arbitration.  *See shierkatz RLLP v. Square, Inc.*, No. 3:15-cv-02202-JST, 2015
     U.S.Dist. LEXIS 169628, at *5 (N.D. Cal. Dec. 17, 2015)  ("ANY ARBITRATION UNDER
26   THIS AGREEMENT WILL BE ONLY BE [sic] ON A [sic] INDIVIDUAL BASIS; CLASS
     ARBITRATIONS, CLASS ACTIONS . . . AND CONSOLIDATION WITH OTHER
27   ARBITRATONS ARE NOT PERMITTED").  Notwithstanding, the day after this Court sent the
     *shierkatz* case to arbitration, shierkatz filed a purported ***class*** arbitration demand with the AAA.

28

1  magazines.  *See Abu Maisa, Inc. v. Flint Mobile, Inc.*, No. 15-cv-6338-DMR (N.D. Cal.)

2  (alleging that plaintiff visited defendants' websites and was "dissuaded" from even trying to

3  open an account.).[2]

4  **III.    ARGUMENT**

5      **A.    Legal Standard for a Motion to Dismiss**

6        Under Rule 12(b)(6), a complaint should be dismissed when it "fail[s] to state a claim

7  upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While the court accepts as true all

8  material allegations in the complaint, it need not accept the truth of conclusory allegations or

9  unwarranted inferences, nor should it accept legal conclusions as true merely because they are

10  cast in the form of factual allegations.  *Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 820 (9th

11  Cir. 2002).  When a plaintiff fails to allege facts to establish statutory standing, its claim should

12  be dismissed for failure to state a claim under Rule 12(b)(6).  *See, e.g., Petzschke v. Century*

13  *Aluminum Co.*, 729 F.3d 1104, 1109 (9th Cir. 2013) ("[F]ailure to allege statutory standing

14  results in failure to state a claim on which relief can be granted.").

15      **B.    Because White Lacks Standing Under the Unruh Act to Pursue His**
16              **Hypothetical Claim, It Should Be Dismissed under Rule 12(b)(6)**

17        To dismiss Plaintiff White's complaint, this Court need answer only one question:  When

18  a business is alleged to maintain a discriminatory policy, does every person and entity

19  hypothetically subject to the policy have standing to sue under the Unruh Act, even if they never

20  attempted to do business with the defendant?  This is not a hard or close question.  California law

21  uniformly and clearly answers it:  "No."

22        "[T]he cases interpreting the [Unruh] Act have consistently held that an individual

23  plaintiff has standing to bring claims thereunder only if he or she *has been the victim of the*

24  *defendant's discriminatory act.*"  *Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 419

25  (2008) (original emphasis).  Thus, only those persons whose rights under the Act have been

26  ───────────────────

27      [2] The Abu Maisa plaintiff also alleges that, through its counsel, it will visit each of the six
  defendants' websites every day in an attempt to accumulate statutory damages.

28

1    "denied" have standing.  *Id.* (*citing* Cal. Civ. Code §52 (a) and (c))*; see also Hous. Rights Ctr.,*

2    *Inc. v. Moskowitz*, No. CV 04-2266 PA (VBKx), 2004 U.S. Dist. LEXIS 28885, at *10 (C.D.

3    Cal. Sep. 20, 2004) (affirming dismissal of Unruh Act claim brought by housing organization

4    because it was not a "person[] aggrieved" under the Act).

5         The recent *Surrey* case is dispositive.  In *Surrey*, the male plaintiff visited an online

6    dating service "with the intent of utilizing its services."  *Surrey*, 168 Cal. App. 4th at 417.  Upon

7    reviewing the service's website, he learned the service charged male subscribers more than

8    females.  *Id.*  He opted not to subscribe, and instead sued the service for gender discrimination

9    under the Unruh Act.  The California Court of Appeal affirmed dismissal of his claim for lack of

10   standing.  Noting that "[t]he prerequisites for standing to assert statutorily based causes of action

11   are to be determined from the statutory language, as well as the underlying legislative intent and

12   the purpose of the statute," it observed that the Unruh Act permits only those persons who are

13   "aggrieved" to sue for preventative relief and only those persons "denied the rights" provided

14   under the Act to seek damages.  *Id.* at 417-18.  The plaintiff was not such a person because "he

15   had never subscribed to or utilized its online services":

16          The mere fact that [plaintiff] became aware that [defendant] was offering a
            discount policy for women subscribers at the time he accessed its [website] did
17          not constitute a denial of his antidiscrimination rights under [the Unruh Act].
            Since [plaintiff] did not attempt to subscribe to [defendant's] services, his interest
18          in preventing discrimination is arguably no greater than the interest of the public
            at large.
19

20   *Id.* at 418-19; *see also id.* at 420 (stating that plaintiff lacked standing to sue because he "did not

21   suffer discrimination in any sense other than 'in the abstract.'").

22         *Orloff v. Hollywood Turf Club*, 110 Cal. App. 2d 340 (1952), a case cited in *Surrey*, holds

23   similarly.  In *Orloff*, the plaintiff was ejected from the defendant race track and was told that if

24   he should "thereafter, at any time, purchase a ticket or tender the cost of admission he would not

25   be admitted to the track and, if by chance he should happen to be admitted he would be ejected."

26   *Id.* at 341.  He sued under the Unruh Act's statutory predecessor, not for the actual ejection (a

27   claim barred by the statute of limitations), but rather for "his nonadmission or ejection on each

28

1  and every racing day the track was open thereafter within three years of the date of the filing of

2  his complaint, even though he had not personally appeared at the track or purchased a ticket or

3  been ejected on any of such days." *Id.* at 341-42.  The Court of Appeal affirmed dismissal of his

4  complaint, holding that he could not bring claims for days when he had not actually attempted to

5  enter the racetrack, any more than any other member of the general public who did no more than

6  state an intention to seek admission to the racetrack.  *Id.* at 344; *see also Torres v. Unum Life Ins.*

7  *Co. of Am.*, No. 08-cv-1940, 2009 U.S. Dist. LEXIS 1170 (N.D. Cal Jan. 8, 2009) (Patel, J.)

8  (finding that plaintiff lacked statutory and constitutional standing to assert Unruh Act claim

9  where alleged harm would only be realized through a series of hypothetical events).

10         To the same effect is *Weaver v. Pasadena Tournament of Roses Ass'n*, 32 Cal. 2d 833

11  (1948), also brought under the Unruh Act's statutory predecessor.  There, the plaintiff sought to

12  represent a class of persons who had waited in line to buy tickets for the Rose Bowl and were

13  unable to because the defendants made available fewer tickets than advertised.  But the putative

14  class included a host of people who had not necessarily suffered injury.  Recognizing that each

15  putative class member would need to establish that he "presented himself and demanded

16  admittance to the game," "tendered the price of the ticket," and was wrongfully refused

17  admission, the California Supreme Court affirmed denial of class certification.  *Id.* at 838.

18  Similarly, in *Bartlett v. Hawaiian Vill., Inc.*, 87 Cal. App. 3d 435 (1978), the Court of Appeal

19  held that individual issues predominated in a putative class action under the Unruh Act because

20  "each plaintiff must independently establish that he presented himself to The Club Baths and

21  demanded admittance, that he tendered the admission fee [and] that he was ejected or refused

22  admission." *Id.* at 438 n.6.

23         This principle—requiring that the plaintiff have actually sought to avail himself or herself

24  of the defendant's products or services and to have suffered discrimination in the process—is

25  also applied in representative actions.  Courts applying California law have repeatedly rejected

26  actions by would-be representatives, because they themselves do not claim to have been the

27  victim of any discrimination.  *See, e.g.*, *Reyes v. Atl. Richfield  Co., et al.*, 12 F.3d 1464 (9th Cir.

28

1993) (affirming summary judgment ruling that franchise owners lacked standing under the Unruh Act to sue for alleged racial discrimination against their Filipino cashiers and accountants); *Midpenninsula Citizens for Fair Hous. v. Westwood Inv'rs*, 221 Cal. App. 3d 1377, 1383 (1990) (holding that housing nonprofit was not a "person aggrieved" within the meaning of the Unruh Act, which limits standing to "those individuals actually denied full and equal treatment by a business establishment"); *Hous. Rights* Ctr., 2004 U.S. Dist. LEXIS 28885 at *10 (same).

These cases make abundantly clear that allegations that a plaintiff was aware that defendant maintains an allegedly discriminatory policy, or that the plaintiff would have attempted to do business with the defendant but for that policy, are insufficient to assert an Unruh Act claim. The Act only provides redress to a plaintiff who has been personally injured by a defendant's action. *See Hous. Rights Ctr.*, 2004 U.S. Dist. LEXIS 28885; *Surrey*, 168 Cal. App. 4th 414; *Orloff*, 110 Cal. App. 2d 340. Thus, the *Surrey* plaintiff actually visited the defendant's website with the intention of signing up for its dating service, but still lacked standing because he did not subscribe to the service. *Surrey*, 168 Cal. App. 4th at 417. The *Orloff* plaintiff was expressly singled out by the defendant racetrack and told he would not be admitted in the future, but lacked standing because he never again sought admission. *Orloff,* 110 Cal. App. 2d at 343.

Plaintiff White comes nowhere close to alleging facts sufficient to confer Unruh Act standing. He claims only to have become aware of Square's supposedly discriminatory policy because he is acquainted with the plaintiff in the related *shierkatz* action. FAC ¶ 9. He does not allege that he ever registered an account with Square, much less that he was rejected or terminated from the Square service. Indeed, unlike the *Surrey* and *Orloff* plaintiffs, White nowhere alleges that he even visited the Square website or ever had any intention of signing up for Square's service. *See id.* Because White is not a "victim" of any alleged "discriminatory act," he was not denied rights within the meaning of the Unruh Act. *See Surrey*, 168 Cal. App. 4th at 416; *Midpeninsula*, 221 Cal. App. 3d at 1383 (standing under the Act extends only to

persons "actually denied full and equal treatment by a business establishment."). White's case should therefore be dismissed.[3] Moreover, the allegations of the FAC make clear that White did not engage with Square in any way necessary to confer standing to bring an Unruh Act claim. Given that, he cannot amend to allege a viable claim, and his complaint should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Square respectfully requests that this Court dismiss the FAC with prejudice.

DATED:  January 26, 2016                                Respectfully submitted,

                                                                            WILSON SONSINI GOODRICH & ROSATI
                                                                            Professional Corporation


                                                                            By: /s/ Colleen Bal                                      
                                                                                    Colleen Bal

                                                                            *Attorneys for Defendant Square, Inc.*

_____

[3] White's failure to allege facts sufficient to confer standing is no accident. It results from the deliberate effort by his counsel to avoid engagement with Square—so as to avoid the arbitration provision in the Square Seller Agreement that all Square users must accept. If White were to engage with Square in the hopes of manufacturing a (nonexistent) claim, that dispute would be subject to arbitration.