1  WILLIAM McGRANE [057761]
   McGRANE PC
2  Four Embarcadero Center, Suite 1400
3  San Francisco, California 94111
   Telephone: (415) 292-4807
4  Email:  william.mcgrane@mcgranepc.com

5  FRANK R. UBHAUS [046085]
6  BERLINER COHEN LLP
   10 Almaden Boulevard, 11th Floor
7  San Jose, CA 95113
   Telephone: (408) 286-5800
8  Email:  frank.ubhaus@berliner.com

9  Attorneys for Plaintiff Robert White, an individual,
   and all others similarly situated
10

11              UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14

15 | ROBERT WHITE, an individual, and all others similarly situated, | Case No.:  3:15-cv-04539-JST |
16 | | **PLAINTIFF'S MEMORANDUM OF** |
   | Plaintiffs, | **POINTS AND AUTHORITIES IN** |
17 | | **OPPOSITION TO SQUARE, INC.'S** |
   | v. | **MOTION TO DISMISS FIRST** |
18 | | **AMENDED COMPLAINT** |
19 | SQUARE, INC., a Delaware corporation, | |
20 | Defendant. | Date:  March 10, 2016 |
   | | Time:  2:00 PM |
21 | | Place:  Courtroom 9—19th Floor |
   | | Before:  Hon. Jon S. Tigar |
22

23

24

25

26

27

28

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST

**TABLE OF CONTENTS**

Quick Review ........................................................................................................ 1

Argument ............................................................................................................... 2

I.   The Unruh Law Makes it Illegal for Business Establishments to Discriminate Against Persons Based Solely on Such Persons Engaging in Their Lawful Occupations. ....... 2

II.  The Parties' Positions Respecting What the Relevant Case Law Requires Must and Should be Pled in Order to Have Statutory Standing to sue for Statutory Damages Under the Unruh Law .............................................................................................. 3

A.   Credit Card Company's Position. ...................................................................... 3

B.   Bankruptcy Law Firm's Position. ..................................................................... 4

III. The Parties' Positions Respecting What the District Court Must and Should Require Bankruptcy Law Firm Must and Should Plead in Order to Have Statutory Standing to sue Credit Card Company for Statutory Damages Under the Unruh Law. .................. 8

A.   Credit Card Company's Position. ...................................................................... 8

B.   Bankruptcy Law Firm's Position. ..................................................................... 9

Conclusion ........................................................................................................... 10

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

Cruz v. Sky Chefs, Inc.,
    2013 U.S. Dist. LEXIS 65114 (N.D. Cal. May 6, 2013) .................................................. 9

4

5

dpiX LLC v. Yieldboost Tech, Inc.,
    2015 U.S. Dist. LEXIS 117267 (N.D. Cal. 2015) ........................................................5

6

7

Hous. Rights Ctr., Inc. v. Moskowitz,
    2004 U.S. Dist. LEXIS 28885 (C.D. Cal. Sept. 20, 2004) ........................................... 3

8

Kittok v. Ralphs Grocery Co.,
    2009 U.S. Dist. LEXIS 131514 (S.D. Cal. July 27, 2009) ........................................... 5

9

10

McCalden v. Cal. Library Ass'n,
    955 F.2d 1214 (9th Cir. 1992) ..................................................................................... 2

11

12

Reyes v. Atl. Richfield Co.,
    12 F.3d 1464 (9th Cir. 1993) ....................................................................................... 3

13

Torres v. Unum Life Ins. Co. of Am.,
    2009 U.S. Dist. LEXIS 1170 (N.D. Cal. Jan. 8, 2009) ................................................ 4

14

15

**State Cases**

16

Angelucci v. Century Supper Club,
    41 Cal. 4th 160 (2007) ................................................................................ 5, 6, 7, 9, 10

17

18

Bartlett v. Hawaiian Vill.,
    87 Cal. App. 3d 435 (1978) ..................................................................................... 4, 9

19

20

Koire v. Metro Car Wash,
    40 Cal. 3d 24 (1985) ................................................................................................ 5, 6

21

Long v. Valentino,
    216 Cal. App. 3d 1287 (1989) ..................................................................................... 2

22

23

Marina Point, Ltd. v. Wolfson,
    30 Cal. 3d 721 (1982) ............................................................................................... 2, 3

24

Midpeninsula Citizens for Fair Hous. v. Westwood Investors,
    221 Cal. App. 3d 1377 (1990) ..................................................................................... 4

25

26

Orloff v. Hollywood Turf Club,
    110 Cal. App. 2d 340 (1952) .................................................................................... 4, 9

27

Sisemore v. Master Fin., Inc.,
    151 Cal. App. 4th 1386 (2007) ................................................................................... 2

28

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST

Surrey v. TrueBeginnings, L.L.C.,
    168 Cal. App. 4th 414 (2008) ........................................................... 3, 6, 7, 9

Weaver v. Pasadena Tournament of Roses Asso.,
    32 Cal. 2d 833 (1948) ....................................................................... 4, 9

**State Statutes**

Cal. Civ. Code § 51 ............................................................................... 3

Cal. Civ. Code § 51(b) ........................................................................... 1

Cal. Civ. Code § 51.5(a) ........................................................................ 1

Cal. Civ. Code § 51.5(b) ........................................................................ 1

**Rules**

Fed. R. Civ. P. 15(a)(2) ......................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST

1

**Quick Review**

2       This case pleads a single a claim for relief alleging occupational discrimination by

3   Credit Card Company against Bankruptcy Law Firm.[1]

4       To the extent the claim alleges that occupational discrimination generally violates

5   the Unruh Law, the claim is not meaningfully questioned by the present motion and, in

6   any case, the legal basis for that proposition is thoroughly analyzed below.  The real

7   question is what set of facts must be pled for a person to be deemed to have statutory

8   standing to sue for statutory damages on account of a specific occurrence of occupational

9   discrimination in violation of the Unruh Law.[2]

10      In this latter regard, Credit Card Company contends that only those persons who

11  have engaged with it to the extent of clicking the blue "Continue" button on Credit Card

12  Company's website must and should be deemed to have any standing here.  In contrast,

13  Bankruptcy Law Firm contends that persons who have learned that they are the particular

14  subjects of occupational discrimination—regardless of whether they have ever clicked the

15  blue "Continue" button on Credit Card Company's website—must and should be deemed

16  to have standing here.

17

18

19

20

21

22

23

---

24  [1] This brief adopts all abbreviations previously employed in the First Amended Complaint
25  (Dkt 20 [FAC]).  Other pleadings on file in this case are referred to solely by their docket
    numbers.

26  [2] For purposes of defining the scope of the prohibition against Unruh Law violations stated
    at Cal. Civ. Code § 51.5(a)—which section cross-references Cal. Civ. Code § 51(b)—Cal.
27  Civ. Code § 51.5(b) defines the term "person" to include "any person, firm, association,
    organization, partnership, business trust, corporation, limited liability company, or
28  company."

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST

1

**Argument**

2   **I.   The Unruh Law Makes it Illegal for Business Establishments to Discriminate Against Persons Based Solely on Such Persons Engaging in Their Lawful Occupations.**

3

4          The prohibition against occupational discrimination under Unruh Law is set forth

5   in <u>Sisemore v. Master Financial, Inc.</u> (<u>Sisemore Case</u>), 151 Cal. App. 4th 1386, 1405–

6   1406 (2007).  In the <u>Sisemore Case</u>, the California Court of Appeal held that a bank could

7   not refuse to make a residential mortgage loan to a woman solely based on her

8   occupational status as the owner of a day care center, stating:

9          In <u>Long v. Valentino</u> (1989) 216 Cal.App.3d 1287 … the court stated: '[A]n
10         announcement such as 'You can't eat at my diner because you are a lawyer,
           bricklayer, female, or Indian chief' would be actionable under the Unruh Act.'  We
11         conclude that Sisemore has alleged a cognizable Unruh Civil Rights Act claim.  At
           its most basic form, the fourth cause of action alleges that Master Financial
12         arbitrarily discriminated against Sisemore solely on the basis of her occupational
           status.  Liberally construed, the claim is that she was refused a [residential]
13         mortgage loan simply because she is a family daycare home operator.

14                                                        * * *

15         In addition, we note that seven years before <u>Long</u> was decided, the Supreme Court
           in dictum mentioned that discrimination on the basis of employment status was a
16         cognizable claim under the Act.  (<u>Marina Point</u>, [<u>Ltd. v. Wolfson</u>, 30 Cal.3d 721
           (1982) (<u>Marina Point Case</u>)] p. 736; see also 58 Ops.Cal.Atty.Gen. 608 (1975)
17         [concluding that arbitrary occupational discrimination was prohibited by Act].)
           The high court has never repudiated that dictum.[3]

18

19         The <u>Marina Point Case</u> that is relied upon by the <u>Sisemore Case</u> is highly

20  instructive for other reasons.  Thus, in the <u>Marina Point Case</u>, a residential apartment

21  lease provided that no children were allowed.  This lease had to be renewed yearly.

22  During the third year of her tenancy, a woman gave birth to a child.  The landlord found

23  out about the child, refused to renew the lease, and ultimately sued the child's mother for

24  unlawful detainer.  The California Supreme Court held:

25

26  _____

27  [3] <u>See also</u> <u>McCalden v. California Library Ass'n</u>, 955 F.2d 1214, 1221 (9th Cir. 1992)
    ("The California courts have defined the classes of the Unruh Act very broadly to include
28  … occupational groups.").

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

1
2
The landlord's blanket exclusion of all families with minor children is not permissible under the Unruh Act even if children "as a class" are "noisier, rowdier, more mischievous and more boisterous" than adults.

3
                                          ***

4
5
6
Indeed, the basic rights guaranteed by section 51 would be drastically undermined if, as the landlord contends, a business enterprise could exclude from its premises or services entire classes of the public simply because the owner of the enterprise had some reason to believe that the class, taken as a whole, might present greater problems than other groups.

7    *Id.* at 736, 739.

8         Here, just like the landlord in the <u>Marina Point Case</u>, Credit Card Company has

9    "exclude[d] from its … services entire classes of the public simply because the owner of

10   the [Credit Card Company and/or Credit Card Company's financial partner(s) thinks] …

11   there is some reason to believe that the class, taken as a whole, might present greater

12   problems than other groups."  *Id.* at 739.

13
14
**II.  The Parties' Positions Respecting What the Relevant Case Law Requires Must and Should be Pled in Order to Have Statutory Standing to sue for Statutory Damages Under the Unruh Law.**

15        **A.  Credit Card Company's Position.**

16        Credit Card Company's general position respecting statutory standing to sue for

17   statutory damages under the Unruh Law is summarized as follows:  Unless a person

18   claiming Unruh Law violations can demonstrate it was personally the victim of illegal

19   discrimination, the Unruh Law does not provide such a person with any statutory

20   standing to sue anyone for statutory damages.  <u>See</u> Dkt 32 at 4:15-7:5 (citing, *inter alia*,

21   <u>Surrey v. TrueBeginnings, LLC</u> (<u>Surrey Case</u>), 168 Cal. App. 4th 414, 419 (2008)).

22        Not addressed by Credit Card Company's general position is what a person must

23   and should plead to establish that such a person has ever personally been the victim of

24   illegal discrimination.  In particular, the cases cited by Credit Card Company finding no

25   statutory standing are unhelpful in that they only involve civic organizations trying to

26   derivatively assert their constituents' civil rights.  <u>See</u>, <u>Reyes v. Atl. Richfield Co., et al.</u>,

27   12 F.3d 1464 at 1471 (9th Cir. 1993), <u>Hous. Rights Ctr., Inc. v. Moskowitz</u>, 2004 U.S.

28

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

1   Dist. LEXIS 28885 at *10 (C.D. Cal. 2004), <u>Midpenninsula Citizens for Fair Hous. v.</u>

2   <u>Westwood Inv'rs</u>, 221 Cal. App. 3d 1377, 1383 (1990).[4]

3      **B.  Bankruptcy Law Firm's Position.**

4      As a preliminary matter, Bankruptcy Law Firm notes that the FAC does not plead

5   any sort of derivative case and thus does not run afoul of Credit Card Company's civic

6   organization cases.  Rather, the FAC alleges that Bankruptcy Law Firm is a sole

7   proprietorship that belongs to Mr. White.  (FAC at ¶ 1.)  The FAC then alleges that

8   Bankruptcy Law Firm practices, *inter alia*, bankruptcy law.  (FAC at ¶ 7.)  Finally, the

9   FAC alleges that Credit Card Company effectively put a placard in that entity's

10  window—i.e., put a Bad List up on its website—telling Bankruptcy Law Firm 'don't

11  come in' if you are a bankruptcy lawyer, which last demand Bankruptcy Law Firm

12  complied with.  (FAC at ¶ 9.)

13     Bankruptcy Law Firm contends these allegations of the FAC, and specifically the

14  allegations set forth in FAC ¶ 9, should be held sufficient to state a claim for relief here.[5]

15  [4] Credit Card Company also cites <u>Orloff v. Hollywood Turf Club</u> (<u>Orloff Case</u>), 110 Cal.
16  App. 2d 340 (1952) and <u>Weaver v. Pasadena Tournament of Roses Ass'n</u> (<u>Weaver Case</u>),
    32 Cal. 2d 833 (1948).  Neither the <u>Orloff Case</u> nor the <u>Weaver Case</u> are true statutory
17  standing cases to begin with.  Thus, the <u>Orloff Case</u> only involved the issue of whether
18  someone who had visited and been ejected from a racetrack (as well as then simultaneously
    threatened with future exclusion from that racetrack if he came back) had to nonetheless
19  physically present himself at that racetrack on multiple future occasions if he wished to
    obtain multiple awards of statutory damages.  <u>See Orloff Case,</u> 110 Cal.App.2d at 344.
20  Given that there are no requests for multiple awards of statutory damage contained in the
21  FAC, the only relevance the <u>Orloff Case</u> would possibly have here would come up in the
    context of a class certification motion.  The <u>Weaver Case</u> is literally only a class
22  certification case.  <u>See Weaver Case,</u> 32 Cal.2d at 838–841.  The two remaining cases cited
    by Credit Card Company, <u>Bartlett v. Hawaiian Vill., Inc.</u> (<u>Bartlett Case</u>), 87 Cal. App. 3d
23  435 (1978) and <u>Torres v. Unum Life Ins. Co. of Am.</u> (<u>Torres Case</u>), 2009 U.S. Dist. LEXIS
24  1170 (N.D. Cal. 2009) are also irrelevant *vis-à-vis* the issue of whether Bankruptcy Law
    Firm has statutory standing to sue Credit Card Company for statutory damages under the
25  Unruh Law.  <u>Bartlett Case</u> (like <u>Weaver Case</u>) was concerned with typicality in a class
    certification context and not with standing.  The <u>Torres Case</u> involved allegations of very
26  attenuated future events, which is certainly not what is pled by a FAC that deals only with
27  things which have previously taken place.  <u>See FAC at ¶¶ 5–9.</u>

28  [5] FAC ¶ 9 reads:  "As previously alleged in the initial complaint herein filed October 1,
    2015, Mr. White read this District Court's file in the SK Case and thereby became aware

4
Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

1    Bankruptcy Law Firm further contends that, under <u>Angelucci v. Century Supper</u>

2  <u>Club</u> (<u>Angelucci Case</u>), 41 Cal. 4th 160 (2007), Credit Card Company's act of effectively

3  placing a 'don't come in' placard in Credit Card Company's window directed at

4  bankruptcy lawyers made Bankruptcy Law Firm a personal victim of illegal

5  discrimination no later than when Mr. White himself first visited Credit Card Company's

6  website and there read Credit Card Company's 'don't come in' placard.[6]

7    In discussing its views on the pernicious nature of such 'don't come in'

8  discrimination, the <u>Angelucci Case</u> harkened back to a time when many African-

9  Americans wound up "encountering … racially segregated … restroom facilities at an

10  unattended structure." *Id.* at 170.  As <u>Angelucci</u> recognized—in order to effectively

11  combat this type of 'don't come in' discrimination—persons subjected to such 'don't

12  come in' discrimination shouldn't be required to do anything beyond just encountering

13  this kind of discrimination before they may properly sue a perpetrator under the Unruh

14  Law for statutory damages on account thereof.  *Id.* at 169–170.

15    In response to Bankruptcy Law Firm's anticipated reliance on the <u>Angelucci</u>

16  of Bad List and, in addition, after first checking to see that Bad List remained unchanged

17  from the date the SK Case was first filed through October 1, 2015, he was then dissuaded
from seeking to become a Credit Card Company customer given the fact his law practice

18  area is similar to that of SK and, as such, Bankruptcy Law Firm falls within Category 28
of Bad List."  To the extent the District Court may deem FAC ¶ 9 too vague a description

19  of Bankruptcy Law Firm's degree of engagement with Credit Card Company prior to
Bankruptcy Law Firm having first sued Credit Card Company, Bankruptcy Law Firm

20  hereby requests leave to amend the First Amended Complaint so as to further plead what
actually happened, consistent, of course, with the facts as same are otherwise set forth in

21  this brief.  <u>See</u> Fed. R. Civ. P. 15(a)(2) ("court should freely give leave when justice so

22  requires"), <u>dpiX LLC v. Yieldboost Tech., Inc.</u>, 2015 U.S. Dist. LEXIS 117267 (N.D. Cal.

23  2015) ("there exists a presumption under Rule 15(a) in favor of granting leave to amend.").

24  [6] Whether Bankruptcy Law Firm must and should be held to be a personal victim of illegal
discrimination by Credit Card Company under the facts pled here is in no way dependent

25  on Bankruptcy Law Firm's having pled that it ever suffered actual damages as a result of
its having become such a personal victim.  <u>See</u> <u>Kittok v. Ralphs Grocery Co.</u>, 2009 U.S.

26  Dist. LEXIS 131514 (S.D. Cal. 2009) at *10–*11(citing the <u>Angelucci Case</u> which, in turn,
relies on <u>Koire v. Metro Car Wash</u>, 40 Cal. 3d 24, 34 (1985), where it is said: "[t]he

27  imposition [of statutory damages under the Unruh Law] is in its nature penal, having regard

28  only to the fact that the law has been violated and its majesty outraged.")

5

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

1  <u>Case</u>, Credit Card Company cites the <u>Surrey Case</u>.  Not only is the California Supreme

2  Court decided <u>Angelucci Case</u> the ultimate expression of state law which this District

3  Court is bound to follow in the event it perceives any conflict between those two cases,

4  the <u>Surrey Case</u> is entirely distinguishable from the present case on its facts.

5       Thus, the <u>Surrey Case</u> focused on the fact that the <u>Angelucci Case</u>—which had

6  held that no prior protests by male bar patrons were required in order for such plaintiffs to

7  have immediately accrued statutory standing under the Unruh Law to sue a bar for

8  statutory damages on account of the bar's holding a "ladies' night"—also recited that the

9  bar patron plaintiffs paid the higher admission price charged males as part of that same

10  "ladies' night" promotion.  <u>See</u> <u>Surrey Case</u>, 168 Cal. App. 4th at 420.  Based on that last

11  aspect of what it characterized as the holding in the <u>Angelucci Case</u>, the <u>Surrey Case</u> then

12  "adopt[ed] a bright-line rule that a person must tender the purchase price for a business's

13  services or products in order to have standing to sue it for alleged discriminatory

14  practices relating thereto." *Id.* at p.416.

15       Whatever the merits of the <u>Surrey Case</u>'s determination that the <u>Angelucci Case</u>

16  allowed the Court of Appeal to deny statutory standing to a person who didn't pay money

17  to obtain business services from a business then engaged in price discrimination, the

18  <u>Surrey Case</u> can have no relevance in a situation where Bankruptcy Law Firm was never

19  asked by Credit Card Company to pay any money "for [Credit Card Company's]

20  services" on any basis whatsoever.  Thus, and for present purposes, the <u>Surrey Case</u>

21  should be deemed as limited to its facts.  A conclusion which the language of the <u>Surrey</u>

22  <u>Case</u> itself supports by explicating its so-called "bright-line rule" as always requiring a

23  tender of "the *purchase price* for a business's services or products … to sue … *for*

24  *discriminatory practices relating thereto*." <u>Id</u>.  (*Emphasis* added.)

25       Next, and to the extent the <u>Surrey Case</u>'s statement that "[s]ince Surrey did not

26  attempt to subscribe to TrueBeginnings's services, his interest in preventing

27  discrimination is arguably no greater than the interest of the public at large" (<u>see</u> *id.* at

28  419–20), might be read as suggesting the <u>Surrey Case</u> was meant to be treated as

6

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

1    something more than just a price discrimination case (it wasn't), the District Court should

2    note that Mr. Surrey was not told males should not attempt to subscribe to

3    TrueBeginnings's dating services.  Rather, all Mr. Surrey was told was that males had to

4    pay to subscribe to TrueBeginnings's dating services at a point in time when females

5    didn't have to pay anything.

6           Compare that situation with what Bad List told Mr. White that Bankruptcy Law

7    Firm would have to promise in order for it to properly open a free Credit Card Company

8    account, i.e., "[To properly] creat[e] a Square Account, you [must] also confirm that you

9    will not accept payments in connection with the following businesses or business

10   activities … bankruptcy attorneys …."

11          Since Bankruptcy Law Firm practices bankruptcy law, i.e., it engages in the

12   prohibited "business activities … [of] bankruptcy attorneys," this statement of Credit

13   Card Company's amounts to a 'don't come in' placard, i.e., a 'don't attempt to subscribe'

14   warning and, as such, it fits precisely into the 'don't come in' type of discrimination that

15   is so clearly forbidden by the <u>Angelucci Case</u>.

16          Also—and in light of the entire specificity of the 'don't come in' placard that is

17   the subject of the present claim for relief insofar as it affects bankruptcy lawyers—surely

18   a person like Bankruptcy Law Firm that is so precisely targeted by such illegal

19   discrimination must be deemed to have a much greater interest in protecting that person's

20   own interests than the public at large ever would.  Put another way, even if the male

21   population is equated with the whole of the public at large, bankruptcy lawyers certainly

22   do not constitute the whole of the public at large by any possible measure.

23

24

25

26

27

28

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

III.     **The Parties' Positions Respecting What the District Court Must and Should Require Bankruptcy Law Firm Must and Should Plead in Order to Have Statutory Standing to sue Credit Card Company for Statutory Damages Under the Unruh Law.**

    A.  **Credit Card Company's Position.**

        Credit Card Company's stated view on this issue is that the only possible time a person can be said "…to [have sufficiently] engage[d] with [Credit Card Company to create statutory standing] … that dispute would [necessarily also] be subject to arbitration."  <u>See</u> Dkt 32 at n.3.  In advancing this tautological argument, Credit Card Company is effectively asking for a ruling that only by clicking the blue "Continue" button (and thereby agreeing to arbitration) can anyone ever sufficiently engage with Credit Card Company to become entitled to make claim against Credit Card Company under the Unruh Law.

        The argument ignores, as it must, the fact that the Credit Card Company website intentionally makes Bad List available for review by potential customers without in any manner requiring that potential customers first click the blue "Continue" button *before* reading Bad List.  Holding that someone dissuaded from clicking the blue "Continue" button by such person's having first realized that Bad List's 'don't come in' placard applies to it nonetheless still has to click that blue "Continue" button in order to have statutory standing to make a claim under the Unruh Law would be nonsensical.

        The only way Credit Card Company can possibly get to this result from the existing case law would be to equate (i) the need to first pay a discriminatory price to have standing to sue for statutory damages on account of having paid that discriminatory price pursuant to the "bright-line rule" announced in the <u>Surrey Case</u> with (ii) some supposed need to click the blue "Continue" button in this case as a supposedly analogous price of admission that must, as in the <u>Surrey Case</u>, always be paid if one is to ever get any standing to sue anyone.

        The argument, however, proves too much in that such logic could easily be extended to require that an African American confronted with a "white's only" sign at a

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
<u>White et al. v. Square, Inc.</u>, Case No.  3:15-cv-04539-JST

1    restroom or faucet would have to prove he or she used the facilities before accruing any

2    rights to sue whoever posted the signs.  Or as requiring an Irish immigrant confronted

3    with a "no Irish need apply" sign in a shop window to prove he had begged for a job

4    before accruing any right to sue whoever posted the sign.  The Surrey Case cannot and

5    should not be extended in this extreme way and the Angelucci Case precludes any such

6    extension of the Surrey Case in any event.

7    **B. Bankruptcy Law Firm's Position.**

8        One alternative would be to require that a person seeking to sue Credit Card

9    Company must have 'visited' Credit Card Company; during that 'visit' have learned of

10   Bad List; and, based on what he found out was contained in Bad List, thereafter been

11   dissuaded from becoming a Credit Card Company customer.[7]  All because Bad List

12   recited it was not proper for such person(s) to carry on their lawful occupation(s) using

13   the public accommodation(s) otherwise provided by Credit Card Company.  Bankruptcy

14   Law Firm has alleged (or, to the extent it may thus far have failed to sufficiently so

15   allege, hereby represents to the District Court that it most certainly *could* allege) that it

16   personally has already done/experienced all of these various things.

17       Another alternative—albeit one that should only be considered at the time of a

18   class certification motion[8]—would be to require that a person seeking to sue Credit Card

19   Company must have learned of Bad List from some source, and then, based on what it

20

21   [7] What should be deemed a 'visit' to Credit Card Company as opposed to a visit to a football
22   stadium (Weaver Case), a visit to a racetrack (Orloff Case), a visit to a bath house (Bartlett
     Case), or a visit to a bar (Angelucci Case)?  In the world of internet commerce, one 'visits'
23   Credit Card Company merely by accessing Credit Card Company's website, the same way
     Mr. Surrey accessed the TrueBeginnings website.  With the critical differences between
24   the Surrey Case and this case being that no price of admission was charged anyone by
     Credit Card Company to sign up for Credit Card Company's services and there were
25   various prohibitory 'don't come in' placards festooned all over Credit Card Company's
26   windows while nothing equivalent to those placards existed anywhere on the
     TrueBeginnings website.

27   [8] Class definitions are not relevant in connection with a motion to dismiss.  See, e.g., Cruz
28   v. Sky Chefs, Inc., 2013 U.S. Dist. LEXIS 65114 at *12–13 (N.D. Cal. 2013).

9

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST

1    learned, have been thereafter dissuaded from becoming a Credit Card Company

2    customer, all because Bad List recited it was not proper for such a person to carry on its

3    lawful occupation using the public accommodation(s) otherwise provided by Credit Card

4    Company to the public at large.

5                                    **Conclusion**

6         What Credit Card Company was thinking when it first put Bad List up on its

7    website is unclear.  Whatever its reasons, however, Credit Card Company is a business

8    entity headquartered in San Francisco, California, and is thus fully subject to an Unruh

9    Law that has recognized occupational discrimination as illegal conduct for more than

10   three decades.  Yet Credit Card Company's blatant practice of occupational

11   discrimination still goes on to the present day.

12        In the absence of a substantive defense to what it is doing, Credit Card Company

13   has mounted an elaborate procedural defense.  The first one of these defenses was purely

14   arbitration based.  The present defense is purely standing based.  Ignored by all of Credit

15   Card Company's tactical defenses, however, is a very basic thing about the Unruh Law,

16   i.e., *that, as a remedial civil rights statute, it must be liberally construed lest the civil*

17   *rights violations condemned by its provisions go unpunished.*[9]

18   Dated: February 5, 2016                McGRANE PC
                                            BERLINER COHEN LLP
19

20                                          By: /s/ *William McGrane*
                                                 William McGrane
21                                          Attorneys for Plaintiff Robert White, an individual, and
                                            all others similarly situated
22

23

24

─────────────────────

25   [9] Angelucci Case, 41 Cal. 4th at 167 ("[T]he [Unruh] Act must be construed liberally in
     order to carry out its purpose. [Citation omitted.] The Act expresses a state and national
26   policy against discrimination on arbitrary grounds. [Citation omitted.] Its provisions were
     intended as an active measure that would create and preserve a nondiscriminatory
27   environment in California business establishments by "banishing" or "eradicating"
     arbitrary, invidious discrimination by such establishments. [Citation omitted.]")
28

Plaintiff's Memorandum of Points and Authorities in Opposition to Square, Inc.'s
Motion to Dismiss First Amended Complaint
White et al. v. Square, Inc., Case No.  3:15-cv-04539-JST