1  DAVID H. KRAMER, State Bar No. 168452
   JACOB T. VELTMAN, State Bar No. 247597
2  SARA E. ROWE, State Bar No. 295353
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100
   Email: dkramer@wsgr.com
6  Email: jveltman@wsgr.com
   Email: srowe@wsgr.com
7
   COLLEEN BAL, State Bar No. 167637
8  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
9  One Market Plaza
   Spear Tower, Suite 3300
10 San Francisco, CA 94105-1126
   Telephone: (415) 947-2000
11 Facsimile: (415) 947-2099
   Email: cbal@wsgr.com
12
   *Attorneys for Defendant Square, Inc.*
13

14                   UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17 | ROBERT E. WHITE,                          | ) | Case No. 3:15-cv-04539-JST
   |                                            | ) |
18 |         Plaintiff,                         | ) | **SQUARE, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**
   |                                            | ) |
19 |    v.                                      | ) |
   |                                            | ) |
20 | SQUARE, Inc., a Delaware corporation,      | ) |
   |                                            | ) | Date: March 17, 2016
21 |         Defendant.                         | ) | Time: 2:00 pm
   |                                            | ) | Courtroom: 9 – 19th Floor
22 |                                            | ) | Before: Hon. Jon S. Tigar

I.   INTRODUCTION

White claims he became aware of a Square policy that allegedly discriminates against bankruptcy attorneys, in the same way that someone might read a sign saying "no bankruptcy attorneys." He concedes he never sought to register for the Square service, and thus was never (and could not possibly have been) rejected or terminated by Square pursuant to the policy he asserts is discriminatory. Even while admitting the policy was never applied to him, he contends he has standing to sue Square for discrimination under the Unruh Act. He is mistaken. Under blackletter California law, mere awareness of an alleged discriminatory policy, even one hypothetically applicable to the plaintiff, does not confer standing.

White relies on a single case to try to support his position: *Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007). *Angelucci* is inapposite. In contrast to White, who did nothing other than learn of an allegedly discriminatory policy and sue, the *Angelucci* plaintiffs *sought admission* to the defendant's service (a nightclub) and *suffered alleged discrimination* (by paying the gender-based ticket price). The only question was whether the *Angelucci* plaintiffs *also* needed to expressly demand equal treatment at the time of payment. The California Supreme Court answered that question "no." It ruled that, to have standing, the *Angelucci* plaintiffs needed to have sought to avail themselves of the defendant's service and to have suffered discrimination as a result, but not also to have demanded equal treatment at the time of the asserted discrimination. The affirmative steps taken by the *Angelucci* plaintiffs, which conferred standing upon them, are nowhere to be found here. White's complaint should be dismissed with prejudice for failure to state a claim.

II.   ARGUMENT

    A.   **White Lacks Standing Because He Did Not Seek To Avail Himself Of The Square Service, Much Less Suffer Discrimination In The Process**

As discussed in Square's opening brief, only a plaintiff who has been personally injured by a defendant's discriminatory act has standing to sue under the Unruh Act. Mot. to Dismiss ("Mtd.") at 4-7. This follows directly from the statutory language, which grants standing only to "aggrieved" persons and those whose rights under the Act have actually been "denied." *See id*.

at 4-5. To state a claim under the Unruh Act, a plaintiff must therefore allege that it actually sought to avail itself of the defendant's products and/or services, and suffered injury as a result.[1] Mere awareness of a policy, even if it discouraged the plaintiff from seeking to avail itself of defendant's services, is insufficient. White is thus no different than the male plaintiff in *Surrey*, who claimed merely that he was dissuaded from subscribing to a dating service when he learned, upon visiting its website, that the service would charge him a higher subscription price than a woman, or the plaintiff in *Orloff*, who was discouraged from seeking to reenter the defendant racetrack by a warning that he would be rejected if he ever returned. None has standing to sue under the Unruh Act. *See* Mtd. at 5-6. White's case should be dismissed for failure to state a claim.[2]

White makes no genuine effort to distinguish Square's cases because he cannot. He begins with the assertion that Square's cases finding no standing under the Unruh Act "only involve civic organizations trying to derivatively assert their constituent's civil rights." Opp. at

---

[1] White's opposition brief includes a discussion of his view of the substance of Unruh Act law, and in particular, his claim that it prohibits discrimination based on occupation. *See* Opp. at 2-3. Square disagrees with White's statements, but does not reach the merits here, since he does not meet even the threshold standing requirement. But even the cases cited by White support Square's motion on standing. They too show that parties bringing Unruh Act claims must have actually sustained injury resulting from the defendant's alleged discriminatory acts. *See, e.g., Sisemore v. Master Fin., Inc.*, 151 Cal. App. 4th 1386 (2007) (affirming denial of demurrer where plaintiff alleged that she actually sought and was denied a residential mortgage based on alleged protected status); *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721 (1982) (reversing judgment in favor of defendant where plaintiff tenants lost their lease based on discrimination against families with minor children).

[2] White requests that he be permitted to amend the FAC to more fully discuss his "engagement" with Square, apparently to allege that he visited the Square website and read the Square Seller Agreement at some point. *See* Opp. at 4-5, 9. That request should be denied as futile. White has already admitted that he was "dissuaded" from seeking to open a Square account, and was never rejected or terminated by Square pursuant to the terms of the Square Seller Agreement that he claims are discriminatory. *See* FAC ¶ 9. Thus, whether or not he ever visited the Square website or read the Seller Agreement, he lacks standing under the Unruh Act because he did not seek to avail himself of Square's services nor suffer even theoretical discrimination from Square. *See Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 418-20 (2008); *Orloff v. Hollywood Turf Club*, 110 Cal. App 2d. 340, 342-44 (1952); Mtd. at 4-8.

3. That is demonstrably false. *See* Mtd. at 4-7 (*citing Surrey, Orloff, Torres, Weaver* and *Bartlett*).[3]

White contends the *Surrey* case is inapposite because it involved alleged gender-based price discrimination, as opposed to exclusion from a service. Opp. at 6-7. That is a distinction without a difference. The Unruh Act applies where unequal *treatment* results from arbitrary discrimination based on personal characteristics. It does not distinguish price discrimination from exclusion from any other type of alleged discrimination. *See* Unruh Act, Cal Civ. Code § 51 (requiring "full and equal accommodations, advantages, facilities, privileges, or services"). Likewise, *Surrey* itself makes no such distinction. Its analysis of Unruh Act standing is based in part on the statutory language, which confers standing to sue for preventative relief on "aggrieved" persons and for damages on those persons who have been "denied" their rights. *Surrey*, 168 Cal. App. 4th at 445-46. The analysis has nothing to do with a particular type of alleged discrimination. The remainder of the *Surrey* court's analysis is based on prior California cases, only one (of six) of which has to do with alleged price discrimination, and *Surrey* concludes that standing under the Unruh Act is conferred only on those who have been the victim "of the defendant's discriminatory act" – *i.e.*, again not limited to price discrimination. *See id*. at 419 (reviewing California Unruh Act standing cases, including *Midpeninsula Citizens* (exclusion from housing), *Orloff* (exclusion from a racetrack), *Weaver* (exclusion from a football game), and *Barlett* (exclusion from a bath house)).

White's discussion of *Orloff* is equally far from the mark. He contends *Orloff* is not a standing case because it supposedly only involves the question of whether the plaintiff had to seek re-admission to the racetrack "if he wished to obtain multiple awards of statutory damages."

---

[3] Moreover, White's claim that the representative action cases cited by Square (*Reyes, Housing Rights Center,* and *Midpeninsula*) are irrelevant because "the FAC does not plead any sort of derivative case" simply misses the point. Opp. at 4. Those cases demonstrate that mere knowledge or awareness of alleged discrimination is insufficient to bring an Unruh Act case – even where someone else has suffered discrimination resulting from the act of a defendant. Instead, only the actual victim of alleged discrimination has standing to sue. Because White is not such a victim, he lacks standing here.

SQUARE'S REPLY ISO MOTION TO DISMISS FAC           -3-
CASE NO. 3:15-CV-04539-JST

Opp. at 4 n. 4. That is fiction. In *Orloff,* the Court of Appeal affirmed dismissal of plaintiff's case *for lack of standing*, rejecting his contention that he did not need to have sought admission to the racetrack or to pay the entry fee in order to bring a claim under the predecessor to the Unruh Act. *Orloff*, 110 Cal. App. 2d at 342-344. Tellingly, *Orloff* has been described in a host of subsequent decisions, including by the California Supreme Court, as accurately setting forth the standing requirements for an Unruh Act claim. *See, e.g., Angelucci*, 41 Cal. 4th at 170-171 (2007); *Surrey*, 168 Cal. App. 4th at 419.

Finally, White tries to distinguish Square's cited class action cases (*Weaver, Bartlett*) on the claim that they address only class certification issues. Again, White misses the point, perhaps intentionally so. *Weaver* and *Bartlett* were confronting claims by putative classes, with members that had not suffered the requisite injury from discrimination. In rejecting certification of a class containing such members, these courts emphasized that only those parties that seek to avail themselves of the defendant's services, and suffer discrimination as a result, have standing to pursue a claim. Parties like White, who have not sought to utilize a defendant's services and suffered no discrimination, cannot. *See* Mtd. at 6.

### B. *Angelucci* Does Not Support Plaintiff's Position

White argues that the California Supreme Court's decision in *Angelucci* supports his position. He is mistaken. Unlike White, the male plaintiffs in *Angelucci* actually sought to avail themselves of the defendant nightclub's services and were discriminated against based on gender. They "presented [themselves] for admittance, paid the price of admission and entered" the defendant nightclub "on several occasions" and "were charged an admission fee higher than that charged to women." *Angelucci*, 41 Cal. 4th at 164, 170. The only question before the court was whether they also had to have demanded the lower price available to women at the time of payment, *i.e.*, whether "the victim of the asserted discrimination must have demanded equal treatment and have been refused," thus providing the defendant with notice and an opportunity to correct the asserted violation. *Id.* at 168. The Supreme Court held that they did not. *Id.* at 175 ("Plaintiffs adequately alleged that they had suffered an 'invasion of legally protected interests'

. . . [a]ccording to their allegations, each of the plaintiffs was subject to, and paid, defendant's gender-based price differential . . .") (internal citations omitted).

Thus, to the extent relevant here, *Angelucci* only emphasizes White's lack of Unruh Act standing. *See, e.g., id*. at 171 (contrasting *Angelucci* facts with those at issue in *Orloff*: "By contrast, . . . in the present case, plaintiffs did present themselves for admission and paid the price charged by defendant. It cannot be said that defendant had no duty to refrain from discriminating under the circumstances."); *id*. at 175 ("[I]njury occurs when the discriminatory policy is *applied* to the plaintiff — that is at the time the plaintiff patronizes the business establishment, tendering the nondiscounted price of admission.") (original emphasis). Notably, the plaintiff in *Surrey* also sought to rely on *Angelucci* to support his unsuccessful Unruh Act claim. The Court of Appeal rejected his argument, just as this Court should reject White's:

> The presumed facts of *Angelucci*, based on the plaintiffs' allegations that they had paid the price for admission to the night club, render it inapposite here, wherein [plaintiff] concedes that he did not subscribe to [the defendant's] services. Moreover, the California Supreme Court's acknowledgement in *Angelucci* that "a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct" is fatal to [plaintiff's] position here . . . Because he did not attempt to or actually subscribe to [the defendant's] services, [plaintiff] did not suffer discrimination in any sense other than "in the abstract." Thus, in accordance with *Angelucci* itself, he lacks standing to seek relief (whether damages or injunctive relief) for violations of the [Unruh] Act . . . .

*Surrey*, 168 Cal. App. 4th at 420 (internal citation omitted).

White argues that *Angelucci* recognizes what he labels "don't come in" discrimination, pursuant to which African Americans encountering a "white's only" sign, without more, would have standing to sue for racial discrimination under the Unruh Act. Opp. at 5 (*citing Angelucci* at 169-70). He claims to have suffered similar discrimination upon reading Square's Seller Agreement, and that he likewise has standing under the Unruh Act. *Id.* That is nonsense. Even putting aside the offensive inaptness of White's analogy, *Angelucci* simply does not support the position that those who read (or hear about) a sign and claim they therefore chose not to do business with an establishment have standing under the Unruh Act. In each of the cases involving discrimination against African Americans referenced in *Angelucci*, the plaintiff had

standing to pursue a claim under the Unruh Act (or its predecessor) because he or she actually suffered personal injury resulting from the defendant's discriminatory acts. In *Hutson v. Owl Drug Co.,* 79 Cal. App. 390 (1926), the plaintiff was an African American woman who was initially refused service at a lunch counter, then physically and verbally assaulted by one of the servers. In *Jones v. Kehrlein*, 49 Cal. App. 646 (1920), the plaintiff paid for regular theater tickets but was admitted only to a side section of the theater set aside for "the dark races" and was refused admittance to the center section. *Jones*, 49 Cal App. at 647. And in *Suttles v. Hollywood Turf Club*, 45 Cal. App. 2d 283 (1941), the plaintiff purchased tickets for box seats at a racetrack, but was refused admittance on account of race and told to sit in the general admission section. These cases do not remotely suggest that merely reading a sign confers Unruh Act standing or that White has standing to pursue his claim.

### C. Mere Awareness Of A Discriminatory Policy Is Insufficient To Confer Standing

Finally, White argues that to have standing to sue Square, he need only allege that he "visited" Square's website, that during the visit he "learned of" Square's alleged discriminatory policy, and that he was thus "dissuaded" from "becoming a [Square] customer." Opp. at 9. But those are exactly the facts the *Surrey* court held failed to confer standing. The *Surrey* plaintiff alleged that he visited the defendant's dating website, learned of the alleged discriminatory pricing policy, and was thus dissuaded from subscribing to the dating service. *Surrey*, 168 Cal. App. 4th at 417, 418-20. As in *Surrey*, White chose not to seek to avail himself of the Square service and thus was not (and could not possibly have been) rejected or terminated by Square under the policy he claims is discriminatory. *See Angelucci*, 41 Cal. 4th at 175 ("[I]injury occurs when the discriminatory policy is *applied* to the plaintiff . . .") (original emphasis). As discussed in Square's opening brief, but not addressed by White, California courts have uniformly rejected White's theory that mere awareness of an alleged discriminatory policy, even one that may hypothetically apply to the plaintiff, is sufficient to confer Unruh Act standing. *See* Mtd. at 4-7.

SQUARE'S REPLY ISO MOTION TO DISMISS FAC         -6-
CASE NO. 3:15-cv-04539-JST

Square respectfully requests that this Court do the same, and dismiss White's FAC with prejudice.

## CONCLUSION

For the foregoing reasons, Square respectfully requests that this Court dismiss the FAC with prejudice.

DATED:  February 17, 2016            Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ Colleen Bal
        Colleen Bal

*Attorneys for Defendant Square, Inc.*