1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. WHITE,<br><br>           Plaintiff,<br><br>      v.<br><br>SQUARE, INC.,<br><br>           Defendant. | Case No. 15-cv-04539-JST<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS**<br><br>Re: ECF No. 32 |

Plaintiff Robert E. White brings this purported class action against Defendant Square, Inc. ("Square"), alleging that Square violates the California Unruh Civil Rights Act ("Unruh Act") by prohibiting certain types of businesses from using its services.  Before the Court is Square's Motion to Dismiss First Amended Complaint.  ECF No. 32.  For the reasons set forth below, the motion is granted without prejudice.

I.      **BACKGROUND**

A.      **Factual Background**

Defendant Square provides a service which enables individuals and businesses "to accept electronic payments without themselves directly opening up a merchant account with any Visa or MasterCard member bank . . . ."  ECF No. 20 ¶ 5.  Plaintiff White is the principal of a law firm that "sometimes involves representation of creditors in federal bankruptcy proceedings . . . ."  Id. ¶¶ 7–8.  White "is a personal friend and business colleague of Jeremy Katz, a member of the State Bar and a partner in [S]hierkatz, RLLP."  Id. ¶ 8.  Shierkatz is the plaintiff in the related case of Shierkatz RLLP v. Square, Inc., No. 15-cv-02202-JST (N.D. Cal.) (filed on May 15, 2015).

White "read this District Court's file in the [Shierkatz case] and thereby became aware of" Section 6 of Defendant Square's Seller Agreement.  ECF No. 20 ¶ 9.  As of December 21, 2015, Section 6 of the Square Seller Agreement provided:

> By creating a Square Account, <u>you . . . confirm that you will not accept payments in connection with the following businesses or business activities</u>: (1) any illegal activity or goods; (2) buyers or membership clubs, including dues associated with such clubs, (3) credit counseling or credit repair agencies, (4) credit protection or identity theft services, (6) infomercial sales, (7) internet/mail order/telephone order pharmacies or pharmacy referral services (where fulfillment of medication is performed with an internet or telephone consultation, absent a physical visit with a physician including re-importation of pharmaceuticals from foreign countries), (8) unauthorized multi-level marketing businesses, (9) inbound or outbound telemarketers, (10) prepaid phone cards or phone services, (11) rebate based businesses, (12) up-sell merchants, (13) bill payment services, (14) betting, including lottery tickets, casino gaming chips, off-track betting, and wagers at races, (15) manual or automated cash disbursements, (16) prepaid cards, checks, or other financial merchandise or services, (17) sales of money-orders or foreign currency, (18) wire transfer money orders, (19) high-risk products and services, including telemarketing sales, (20) automated fuel dispensers, (21) adult entertainment oriented products or services (in any medium, including internet, telephone, or printed material), (22) sales of (i) firearms, firearm parts or hardware, and ammunition; or (ii) weapons and other devices designed to cause physical injury[,] (23) internet/mail order/telephone order cigarette, tobacco or vaporizer sales, (24) drug paraphernalia, (25) occult materials, (26) hate or harmful products, (27) escort services, or (28) <u>bankruptcy attorneys or collection agencies engaged in the collection of debt.</u>

<u>Id.</u> ¶ 6 (emphasis added). After reading this portion of Square's Seller Agreement, White "was . . . dissuaded from seeking to become a [Square] customer given the fact his law practice area is similar to that of [Shierkatz RLLP] and, as such, [Plaintiff's law firm] falls within Category 28 of" Section 6. <u>Id.</u> ¶ 9.

**B.      Procedural History**

On October 1, 2015, White filed this putative class action against Square, raising a single claim under California's Unruh Civil Rights Act. ECF No. 1. On December 21, 2015, White filed a First Amended Complaint ("FAC"), seeking to represent a class of "all Persons—other than persons who fall within Category 1 of [Section 6]—who have ever had their Accommodations terminated by [Square] based on their violation of [Section 6] or who have ever been dissuaded from seeking Accommodations from [Square] based on their unwillingness to violate [Section 6]." ECF No. 20 ¶ 11. White seeks statutory damages, attorneys' fees, and costs. <u>Id.</u> at 4–5. On January 26, 2016, Square filed a motion to dismiss the FAC, ECF No. 32, which motion the Court

1    now considers.

2    **II.      JURISDICTION**

3              The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(d)(2).  Minimal

4    diversity exists here because Defendant, a Delaware corporation with its principal place of

5    business in San Francisco, CA, is a citizen of Delaware and California for diversity purposes and

6    at least one class member is alleged to be a citizen of a state other than Delaware and California.

7    ECF No. 20 ¶ 12.  Additionally, White alleges that "there are hundreds of thousands of Class

8    members."  Id. ¶ 14.  Because the minimum statutory damage award under the Unruh Act is

9    $4,000, Cal. Civ. Code § 52, White has pleaded that the amount in controversy exceeds

10   $5,000,000, as required by 28 U.S.C. 1332(d)(2).

11   **III.     LEGAL STANDARD**

12             A complaint must contain "a short and plain statement of the claim showing that the

13   pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the

14   grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544,

15   555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

16   accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.

17   662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the

18   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

19   defendant is liable for the misconduct alleged."  Id.  The Court must "accept all factual allegations

20   in the complaint as true and construe the pleadings in the light most favorable to the nonmoving

21   party."  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Dismissal can be based on the

22   lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

23   theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533–34 (9th Cir. 1984).  "The

24   tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals

25   of a cause of action's elements, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556

26   U.S. 662, 663 (2009).  "[F]ailure to allege statutory standing results in failure to state a claim on

27   which relief can be granted . . . ."  Petzchke v. Century Aluminum Co., 729 F.3d 1104, 1109 (9th

28   Cir. 2013).

United States District Court
Northern District of California

## IV.     DISCUSSION

### A.      The Unruh Civil Rights Act

The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  Section 51.5(a) of the Act further provides that "[n]o business establishment of any kind whatsoever shall discriminate against . . . or refuse to . . . contract with . . . any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, . . . because the person is perceived to have one or more of those characteristics."  Section 52(a) provides that "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the  amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6."

The California Supreme Court has stated: "That the [Unruh A]ct specifies particular kinds of discrimination—color, race, religion, ancestry, and national origin—serves as illustrative, rather than restrictive, indicia of the type of conduct condemned."  In re Cox, 3 Cal. 3d 205, 212 (1970).  California courts have held that "arbitrary occupational discrimination is prohibited under the Unruh Act."  Sisemore v. Master Fin., Inc., 151 Cal. App. 4th 1386, 1406 (2007) (citing Long v. Valentino, 216 Cal. App. 3d 1287, 1298 (1989) (stating that, under the Unruh Act, "police officers . . . may not be refused service in a restaurant, denied an apartment, or ejected from a public meeting merely because of their occupation, whether working a shift or on vacation")).

### B.      Defendant's Motion to Dismiss

Square argues that White "has not demonstrated and cannot demonstrate he has suffered injury sufficient to state a claim under the Unruh Act" because White "has never held a Square

1    account" and has "never attempted to use Square's services." ECF No. 32 at 1–3. As a result,

2    Square argues that White lacks statutory standing under the Unruh Act. Id. at 4–8. In making this

3    argument, Square principally relies on the decision of the California Court of Appeal in Surrey v.

4    TrueBeginnings, LLC, 168 Cal. App. 4th 414 (2008).

5         In Surrey, a male plaintiff sued an internet dating service, alleging that the dating service

6    violated the Unruh Act by offering certain free services to women but not men. Id. at 416–17.

7    The plaintiff had visited the dating service's website "with the intent of utilizing its services . . . ."

8    Id. at 417. However, "after discovering the discrepancy in its charges [between men and women],

9    he did not . . . subscribe to or pay for its services." Id. The California Court of Appeal found that

10   the plaintiff lacked statutory standing to sue under the Unruh Act because "[t]he mere fact that [the

11   plaintiff] became aware [that defendant] was offering a discount policy for women subscribers at

12   the time he accessed [defendant's] website did not constitute a denial of his anti-discrimination

13   rights under [the Unruh Act]." Id. at 418. Because the plaintiff "did not attempt to subscribe to

14   [defendant's] services," the court determined that "his interest in preventing discrimination is

15   arguably no greater than the interest of the public at large." Id. at 418–19. In making this

16   determination, the court adopted "a bright-line rule that a person must tender the purchase price

17   for a business's services or products in order to have standing to sue it for alleged discriminatory

18   practices relating thereto." Id. at 416.

19        White attempts to distinguish Surrey based on the fact that Surrey involved a

20   discriminatory pricing practice, whereas White alleges that Square refuses entirely to do business

21   with individuals, such as White, who are bankruptcy attorneys. ECF No. 33 at 10–11. According

22   to White, the Surrey case has "no relevance in a situation where [White] was never asked by

23   [Square] to pay any money for [Square's] services on any basis whatsoever." Id. at 10 (internal

24   quotation marks omitted). However, White does not cite any authority to support his argument

25   that the rule articulated in Surrey -- that a plaintiff must first attempt to subscribe to or use a

26   business's services to have statutory standing under the Unruh Act to challenge those services'

27   allegedly discriminatory provisions -- applies only in the context of discriminatory pricing claims.

28   The Court thus concludes that White has failed to allege statutory standing under the Unruh Act

1    because White has not alleged that he attempted to subscribe to Square's services.  <u>Surrey</u>, 168

2    Cal. App. 4th at 416–19.

3         White's other arguments are similarly unavailing.  White contends that "persons who have

4    learned that they are particular subjects of occupational discrimination -- regardless of whether

5    they have ever [registered a Square Account] -- must and should be deemed to have [statutory]

6    standing . . . ."  ECF No. 33 at 1.  White relies on a California Supreme Court case, <u>Angelucci v.</u>

7    <u>Century Supper Club</u>, for the supposed proposition that "persons subject to . . . 'don't come in'

8    discrimination [via window placards] shouldn't be required to do anything beyond just

9    encountering this kind of discrimination before they may properly sue a perpetrator under the

10   Unruh Law for statutory damages on account thereof."  ECF No. 33 at 9 (citing <u>Angelucci v.</u>

11   <u>Century Supper Club</u>, 41 Cal. 4th 160, 169–70 (2007).  <u>Angelucci</u>, however, provides no support

12   for this proposition.

13        In <u>Angelucci</u>, the "plaintiffs patronized the [Century Supper Club] on several occasions . . .

14   and were charged an admission fee higher than that charged to women."  <u>Id.</u> at 165.  The plaintiffs

15   "sought statutory damages under . . . the Unruh Civil Rights Act and the related Gender Tax

16   Repeal Act."  <u>Id.</u>  "The [Defendant] moved for judgment on the pleadings, arguing that plaintiffs

17   could not recover under section 52(a) for violations of the Unruh Civil Rights Act or the Gender

18   Tax Repeal Act, because they had not alleged they had asked the club to be charged at the same

19   rate as female patrons."  <u>Id.</u>  "The trial court agreed with defendant and entered judgment in its

20   favor."  <u>Id.</u>  "[T]he Court of Appeal affirmed."  <u>Id.</u>

21        The California Supreme Court granted review and reversed the Court of Appeal, finding

22   that the plaintiffs had statutory standing because "each of the plaintiffs was subjected to, and paid,

23   defendant's gender-based price differential."  <u>Id.</u> at 175.  In so doing, the California Supreme

24   rejected defendant's contention that plaintiffs lacked standing simply because they did not allege

25   that they had demanded equal treatment and been refused.  <u>Id.</u> at 173.  By contrast, here, White

26   has neither alleged that he "patronized" Square's service nor that he paid a discriminatory fee.[1]

27   _____

28   [1] In this respect, White's allegations are far more similar to those in the cases distinguished by the
     <u>Angelucci</u> court in which "persons who were not patrons of a business establishment or who did

United States District Court<br>Northern District of California

1    Rather, White merely alleges that "became aware of" Square's policy and "was then dissuaded

2    from seeking to become a [Square] customer."  ECF No. 20 ¶ 9.[2]

3         Ultimately, California case law requires the Court to grant Square's motion to dismiss

4    because Plaintiff has not sufficiently pleaded statutory standing under the Unruh Act.  Angelucci,

5    41 Cal. 4th at 170; Surrey, 168 Cal. App. 4th at 416–19.

6                                              **CONCLUSION**

7         For the foregoing reasons, Defendant's motion to dismiss is hereby granted with leave to

8    amend.

9         IT IS SO ORDERED.

10   Dated:  April 19, 2016

11                                              _____

12                                                       JON S. TIGAR
                                                  United States District Judge
13

14

15

16

17

18

19

20

21

22
_____
23   not present themselves for service or access as a patron and tender the price of admission did not
     adequately allege injury under the predecessor to the [Unruh] Act."  41 Cal. 4th at 170.
24   [2] Nor does the Angelucci court's discussion of cases involving "instances of racial segregation in
     the provision of accommodations" support White's argument.  41 Cal. 4th at 169–70; ECF No. 33
25   at 9.  In Angelucci, the California Supreme Court stated that "[i]t would be absurd to conclude that
     such civil rights act violations occurred only when the African-American patrons [of businesses]
26   expressly demanded that their treatment be equivalent to that accorded the White patrons in those
     situations."  Id.  However, Square does not argue, as defendants had in Angelucci, that White
27   lacks statutory standing because he never expressly demanded that his treatment be equal.  Rather,
     Square makes a more basic point: that under Angelucci and Surrey, White must have at least
28   attempted to use Square's services before White can be found to have statutory standing.  As a
     result, the reasoning of the Angelucci case in this respect is immaterial.