WILLIAM McGRANE [057761]
McGRANE PC
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 292-4807
Email:  william.mcgrane@mcgranepc.com

FRANK R. UBHAUS [046085]
BERLINER COHEN LLP
10 Almaden Boulevard, 11th Floor
San Jose, CA 95113
Telephone:  (408) 286-5800
Email:  frank.ubhaus@berliner.com

Attorneys for Plaintiff Robert White, an individual,
and all others similarly situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT WHITE, an individual, and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>SQUARE, INC., a Delaware corporation,<br><br>     Defendant. | Case No.:  3:15-cv-04539-JST<br><br>**BANKRUPTCY LAW FIRM'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CREDIT CARD COMPANY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:  Thursday August 11, 2016<br>Time:  2:00 PM<br>Courtroom; 9-19th Floor<br>Hon. Jon S. Tigar |

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1
2                                    **Table of Contents**

3   Quick Review...................................................................................................... 1

4   Argument ........................................................................................................... 3

5       I.  The Futile Gesture Rule Precludes Credit Card Company's No Click/No

6       Standing Defense. ................................................................................... 3

7       II.  Based On A Not-Yet-Realized Threat Of Occupational Discrimination

8       Bankruptcy Law Firm Has Plausibly Alleged It Has Standing Under § 52 (a) UL

9       And § 52(c) UL.......................................................................................... 6

10      III.  Bankruptcy Law Firm Has Plausibly Alleged That It "At Least Attempted To

11      Subscribe To Credit Card Company's Service." ..................................... 10

12  Conclusion ........................................................................................................ 15

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1

**Table of Authorities**

2

**Federal Cases**

3

*Aikins v. St. Helena Hosp.*,

4

843 F. Supp. 1329 (N.D. Cal. 1994) ........................................................... 9

5

*Arnold v. UA Theatre Circuit, Inc.*,

866 F. Supp. 433 (N.D. Cal. 1994) ............................................................. 3

6

*Ashcroft v. Iqbal*,

7

556 U.S. 662 (2009) ................................................................................. 12

8

*Ass'n against Discrimination in Emp't, Inc. v. City of Bridgeport*,

647 F.2d 256 (2d Cir. 1981) ....................................................................... 4

9

*Botosan v. Paul McNally Realty*,

10

216 F.3d 827 (9th Cir. 2000) ...................................................................... 3

11

*Castle v. Eurofresh, Inc.*,

12

731 F.3d 901 (9th Cir. 2013) .................................................................... 12

13

*Colindres v. Quietflex Mfg.*,

2005 U.S. Dist. LEXIS 10153 (S.D. Tex. May 21, 2005) ........................... 4

14

*De Funis v. Odegaard*,

15

416 U.S. 312 (1974) ................................................................................... 5

16

*Dimidowich v. Bell & Howell*,

17

803 F.2d 1473 (9th Cir. 1986) .................................................................... 8

18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,

528 U.S. 167 (2000) ................................................................................... 4

19

*Goldman v. Standard Ins. Co.*,

20

341 F.3d 1023 (9th Cir. 2003) .................................................................... 9

21

*Gutowsky v. County of Placer*,

22

108 F.3d 256 (9th Cir. 1997) ...................................................................... 4

23

*Hopper v. City of Pasco*,

241 F.3d 1067 (9th Cir. 2001) .................................................................. 12

24

*Indep. Hous. Servs. v. Fillmore Ctr. Assocs.*,

25

840 F. Supp. 1328 (N.D. Cal. 1993) ........................................................... 4

26

*Int'l Bhd. of Teamsters v. United States*,

431 U.S. 324 (1977) ............................................................................. 3, 15

27

*J.F. v. New Haven Unified Sch. Dist.*,

28

2014 U.S. Dist. LEXIS 55964 (N.D. Cal. 2014) ......................................... 9

ii

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

*Llanos v. Estate of Coelho,*
  1997 U.S. Dist. LEXIS 23255 (E.D. Cal. 1997) ........................................................ 3

*Martin v. Int'l Olympic Comm.,*
  740 F.2d 670 (9th Cir. 1984) .................................................................................... 9

*McKown v. Simon Prop. Group, Inc.,*
  689 F.3d 1086 (9th Cir. 2012) .................................................................................. 9

*Nat'l Fed'n of the Blind v. Target Corp.,*
  582 F. Supp. 2d 1185 (N.D. Cal. 2007) ............................................................... 4, 5

*Pickern v. Holiday Quality Foods,*
  293 F.3d 1133 (9th Cir. 2002) .................................................................................. 4

*Pinchback v. Armistead Homes Corp.,*
  907 F.2d 1447 (4th Cir. 1990) .................................................................................. 4

*Powell v. Tompkins,*
  926 F. Supp. 2d 367 (D. Mass. 2013) ...................................................................... 4

*Rsui Indem. Co. v. Discover P&C Ins. Co.,*
  2016 U.S. App. LEXIS 8025 (9th Cir. 2016) ........................................................... 8

*Scaduto v. Esmailzadeh,*
  2007 U.S. Dist. LEXIS 103241 (C.D. Cal. 2007) ......................................... 6, 7, 8, 9

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ................................................................................ 12

*Stevens v. Optimum Health Inst.,*
  810 F. Supp. 2d 1074 (S.D. Cal. 2011) .................................................................. 14

*Torres v. Unum Life Ins. Co. of Am.,*
  2009 U.S. Dist. LEXIS 1170 (N.D. Cal. Jan. 8, 2009) ............................................. 5

*Wainwright v. Goode,*
  464 U.S. 78 (1983) ................................................................................................... 9

*White v. Square, Inc.,*
  2016 U.S. Dist. LEXIS 524342 (N.D. Cal. 2016) ........................................... *passim*

*Wilson v. Hewlett-Packard Co.,*
  668 F.3d 1136 (9th Cir. 2012) ................................................................................ 12

*Yates v. Bacco,*
  2014 U.S. Dist. LEXIS 35340 (N.D. Cal. 2014) ...................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1

**Federal Statutes**

2

42 U.S.C. § 2000e ............................................................................ 3

3

**State Cases**

4

*Alch v. Superior Court,*

5

    122 Cal. App. 4th 339 (2004) ............................................... 14, 15

*Angelucci v. Century Supper Club,*

6

    41 Cal. 4th 160 (2007) .................................................. 5, 9, 13, 14

7

*Flowers v. Prasad,*

8

    238 Cal. App. 4th 930 (2015) ..................................................... 8, 9

9

*Hutson v. Owl Drug Co.,*

    79 Cal. App. 390 (1926) ........................................................ 13, 14

10

*Koire v. Metro Car Wash,*

11

    40 Cal. 3d 24 (1985) ................................................................... 9

12

*Marina Point, Ltd. v. Wolfson,*

13

    30 Cal. 3d 721 (1982) ................................................................. 3

14

*Midpeninsula Citizens for Fair Hous. v. Westwood Investors,*

    221 Cal. App. 3d 1377 (1990) ....................................... 4, 6, 7, 10

15

*Munson v. Del Taco, Inc.,*

16

    46 Cal. 4th 661 (2009) ................................................................ 9

17

*Orloff v. Hollywood Turf Club,*

    110 Cal. App. 2d 340 (1952) ...................................................... 4

18

*People v. Bishop,*

19

    202 Cal. App. 3d 273 (1988) .................................................... 11

20

*Rolon v. Kulwitzky,*

21

    153 Cal. App. 3d 289 (1984) .................................................... 15

22

*Roth v. Rhodes,*

23

    25 Cal. App. 4th 530 (1994) ....................................................... 3

*Surrey v. TrueBeginnings, L.L.C.,*

24

    168 Cal. App. 4th 414 (2008) ....................................... 5, 10, 13, 14

25

*Weaver v. Pasadena Tournament of Roses Asso.,*

26

    32 Cal. 2d 833 (1948) ................................................................. 4

27

*Winchell v. English,*

    62 Cal. App. 3d 125 (1976) ........................................................ 9

28

iv

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1

**State Statutes**

2 Cal. Civ. Code § 52(a) ............................................................. *passim*

3 Cal. Civ. Code § 52(c) .............................................................. *passim*

Cal. Gov't Code § 7060 .................................................................. 7

4

**Other**

5

1 Witkin, California Criminal Law, *Elements*, § 57 (4th ed. 2012)...................................11

6 5 Witkin, Summary of California Law, *Torts* § 381 (10th ed. 2005) ............................. 11

7 William Shakespeare, Hamlet, act 3, sc.1.........................................................................2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

**Quick Review**

On April 19, 2016, the court dismissed Dkt 20 with leave to amend. *See White v.*
*Square, Inc.* (*White*), 2016 U.S. Dist. LEXIS 524342 (N.D. Cal. 2016).[1]

On April 29, 2016, in response to the court's invitation to amend Dkt 20,
Bankruptcy Law Firm filed a Second Amended Complaint alleging, *inter alia*, that:

- Based on the futile gesture rule, Bankruptcy Law Firm has standing to
  seek both (i) penalties in its capacity as a person denied pursuant to
  California Civil Code section 52(a) (governing who has standing to sue for
  Unruh Law penalties [§ 52(a) UL]) and (ii) an injunction in its capacity as
  a person aggrieved pursuant to California Civil Code section 52(c)
  (governing who has standing to sue for Unruh Law injunctions [§ 52(c)
  UL]) (*see* SAC ¶¶ 1–40).

- Based on the not-yet-realized threat of occupational discrimination which
  it faces from Credit Card Company, Bankruptcy Law Firm has standing to
  seek both (i) penalties in its capacity as a person denied pursuant to
  § 52(a) UL and (ii) an injunction in its capacity as a person aggrieved
  pursuant to § 52(c) UL (*see* SAC ¶¶ 1–40).

- Based on its various attempts to subscribe to Credit Card Company's
  service, Bankruptcy Law Firm has standing to seek both (i) penalties in its
  capacity as a person denied pursuant to § 52(a) UL and (ii) an injunction
  in its capacity as a person aggrieved pursuant to § 52(c) UL (*see* SAC ¶¶
  1–40).[2]

---

[1] This brief adopts all abbreviations previously employed in the Second Amended
Complaint (Dkt 39 [the Second Amended Complaint or SAC]).  All other pleadings on
file in this case are referred to solely by their docket numbers.

[2] Dkt 44 at 9:13–19 seeks dismissal of the first claim, for declaratory relief, on the ground
that this claim rises or falls with the second claim for relief seeking an Unruh Law
injunction and the third claim for relief seeking Unruh Law penalties.  Bankruptcy Law
Firm agrees with Dkt 44's contention that the first claim for relief rises or falls with the
second and third claims for relief and thus only discusses the two latter claims for relief.

1
Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint
*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    On June 10, 2016, Credit Card Company moved to dismiss the Second Amended

2  Complaint.  Dkt 44.  Dkt 44 asserts that the only class with § 52(a) UL and/or § 52(c) UL

3  standing to sue Credit Card Company is comprised of persons who, unlike Bankruptcy

4  Law Firm, have already "elect[ed] … to click the link marked 'Continue' on the Square

5  Website [hereafter, "to click a Blue Button"]."  Dkt 44 at 7:11 (quoting, *inter alia*, SAC ¶

6  14).  The question presented by this motion is thus whether Bankruptcy Law Firm's

7  admitted "elect[ion] not to click [a Blue Button]" requires that this putative class action

8  be dismissed for lack of standing on the part of the putative class representative

9  (defendant's position is hereafter sometimes referred to as "Credit Card Company's no

10  click/no standing defense").  *Id.*

11    First, and as will be demonstrated, *infra*, Bankruptcy Law Firm's claim that

12  don't-come-in discrimination confers *ipso facto* standing allowing it to sue Credit Card

13  Company for Unruh Law violations is not merely the "supposed proposition" described

14  by *White* at *10.  Rather—in light of don't-come-in discrimination alleged herein at SAC

15  ¶¶ 6, 7, 9–21 and pursuant to the futile gesture rule (which is the proper name for

16  Bankruptcy Law Firm's don't-come-in standing argument)—the court should find that

17  Bankruptcy Law Firm has both § 52(a) UL and § 52(c) UL standing in this case.

18    Next—and as Credit Card Company itself admits (*see* Dkt 44 at 9:1–12)—the

19  standing requirements for obtaining § 52(a) UL penalties and § 52(c) UL injunctions are

20  identical.  Because Bankruptcy Law Firm's ***§ 52(c) UL*** standing is beyond cavil, to quote

21  the Bard: "[A]ye, there's the rub."[3]

22    Finally, the Second Amended Complaint—consistent with the California law of

23  attempt (and despite Credit Card Company's no click/no standing defense)—sufficiently

24  alleges that Bankruptcy Law Firm has at least "attempted to subscribe" to Credit Card

25

26

---

27  [3] "To die, to sleep; To sleep: perchance to dream: *aye, there's the rub*; For in that sleep of
28  death what dreams may come, When we have shuffled off this mortal coil, Must give us
   pause … (*emphasis* added)."  William Shakespeare, Hamlet, act 3, sc.1.

2
Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint
*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1   Company's services as to confer § 52(a) UL and § 52(c) UL standing on Bankruptcy Law

2   Firm, all as is required by *White* at *10.

3                             **Argument**

4   **I.**      **The Futile Gesture Rule Precludes Credit Card Company's No**

5           **Click/No Standing Defense.**

6        In the Title VII (42 U.S.C. § 2000e *et seq.*) case of *Int'l Bhd. of Teamsters v.*

7   *United States* (*Teamsters*), 431 U.S. 324, 366 (1977), the Supreme Court adopted the

8   "futile gesture" rule.[4]  In so doing, the Supreme Court rejected an employer's argument

9   that only those persons who unsuccessfully applied for jobs with a higher seniority status

10   could have standing to complain about the discrimination being practiced in an

11   employer's seniority system.  The Supreme Court explained that the purpose of Title VII

12   was "to make possible the 'fashion[ing] [of] the most complete relief possible' and 'so far

13   as possible eliminate the discriminatory effects of the past as well as bar like

14   discrimination in the future.'"

15        Later, and citing *Teamsters*, *Arnold v. UA Theatre Circuit, Inc.* (*Arnold*), 866 F.

16   Supp. 433 (N.D. Cal. 1994), held that plaintiffs who alleged an intent to enter a public

17   accommodation but who admittedly had never attempted entry because doing so would

18   have been futile nonetheless had standing under § 52 UL.  *Id.* at 437–39.

19        *Arnold* was next cited with approval in *Botosan v. Paul McNally Realty*

20   (*Botosan*), 216 F.3d 827 (9th Cir. 2000), where the court said:

21         In *Arnold* … the court held that a plaintiff can recover [§ 52(a) UL] damages
22         where there is proof that [Unruh Law] violations … deterred him or her on a
             particular occasion from attempting to enter a place of public accommodation.
23         *See id.* at 439.  [¶] In this case, Appellee has established a case for an award of
             [§ 52(a) UL] statutory minimum damages.  The record is undisputed that

24

25   ―――――――――――――
     [4] "Federal cases interpreting Title VII are often used by California courts to interpret
26   California anti-discrimination statutes."  *Llanos v. Estate of Coelho*, 1997 U.S. Dist.
     LEXIS 23255, *29 (E.D. Cal. 1997); *see also Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d
27   721, 740 (1982); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 538 (1994) ("title VII of the Civil
     Rights Act of 1964 … involve[s] policies similar to those in the Unruh Civil Rights
28   Act").

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint
*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1
2
3
4
5

> Appellants did not provide handicapped parking on at least one occasion when Appellee attempted to become a customer.  At the least, these facts make out a case of deterrence.  As the district court noted, although Appellee could have gained access to Realty World by using a non-disabled parking space, he would have risked having another car park next to him, thereby making it impossible for him to reenter his vehicle from his wheelchair.  Appellee was thus deterred from patronizing Realty World.

6   *Id.* at p. 835; *see also Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185,

7   1194 (N.D. Cal. 2007) (futile gesture rule was held to confer § 52 UL standing); *Indep. Hous. Servs. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1335 (N.D. Cal. 1993)

8   (Comparing lack of standing where plaintiff failed to show design of building had any

9   effect on access with "[a] person of color [who] may not need to attempt to enter a building that bears a 'whites only' sign to have standing to sue regarding the exclusion of

10  people of color….because the exclusionary policy is clear; it is therefore sufficient to allege that the excluded person would otherwise go into the building.")[5]

11      While the futile gesture rule may seem inconsistent with certain cases previously

12  relied upon by Credit Card Company—to wit *Orloff v. Hollywood Turf Club* (*Orloff*); 110

13  Cal. App. 2d 340 (1952); *Weaver v. Pasadena Tournament of Roses Ass'n.*, 32 Cal. 2d

14  833 (1948); *Midpeninsula Citizens for Fair Hous. v. Westwood Inv'rs* (*Midpeninsula*),

15

16  [5] The futile gesture rule is often applied by the Ninth Circuit in non-Unruh Law equal

17  access cases such as *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136–37 (9th Cir. 2002) (ADA claim); *Gutowsky v. Cty. of Placer*, 108 F.3d 256, 260–61 (9th Cir. 1997)

18  (§ 1983 civil rights claim, with the court otherwise holding that the futility of acting can be based on what a plaintiff observed had happened when others like himself had tried to

19  act earlier).  Out of circuit cases applying the futile gesture rule in non-Unruh Law equal

20  access cases are equally common.  *See*, *generally*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–82 (2000) (not necessary to use or attempt

21  to use the lake to state a claim under the Clean Water Act); *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990) (after being told African-Americans

22  were not welcome, plaintiff "was not required to … examine the property … for precisely

23  the same reasons why she had no need to exercise the futility of submitting an offer.");

24  *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 281 n.23 (2d Cir. 1981) ("Those who can prove they were deterred from applying for employment

25  by an employer's discriminatory practices are actual victims of discrimination….");

26  *Colindres v. Quietflex Mfg.*, 2005 U.S. Dist. LEXIS 10153, *41 (S.D. Tex. 2005) (plaintiff who did not apply for a promotion due to announced English language fluency

27  requirement had standing); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 384 (D. Mass. 2013) ("An individual's failure to [apply for a firearm's license] does not present a bar to

28  standing, however, if the individual can demonstrate that applying for a firearms license would have amounted to an exercise in futility.").

4

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1   221 Cal. App. 3d 1377 (1990); *Torres v. Unum Life Ins. Co. of Am.*, 2009 U.S. Dist.

2   LEXIS 1170 (N.D. Cal. 2009); *Angelucci v. Century Supper Club* (*Angelucci*), 41 Cal.

3   4th 160 (2007), and *Surrey v. TrueBeginnings* (*Surrey*), 168 Cal. App. 4th 414 (2008)—

4   in fact it is not.  This is because, as Bankruptcy Law Firm noted earlier at Dkt 33 at 9 n.7:

5   "In the world of internet commerce, one 'visits' Credit Card Company merely by

6   accessing Credit Card Company's website, the same way Mr. Surrey accessed the

7   TrueBeginnings website.  With the critical differences between *Surrey* and this case

8   being that no price of admission was charged anyone by Credit Card Company to sign up

9   for Credit Card Company's services and there were various prohibitory don't-come-in

10  placards festooned all over Credit Card Company's windows while nothing equivalent to

11  those placards existed anywhere on the TrueBeginnings website."

12      Once one accepts that, any time Bankruptcy Law Firm visited Credit Card

13  Company's website, it was, in effect, thereby presenting itself for purposes of becoming a

14  subscriber to Credit Card Company services—which it did before it ever sued Credit

15  Card Company (SAC ¶¶ 8–11) as well as daily over the last six months (SAC at ¶ 18)—

16  Credit Card Company's 'you must present yourself and pay to enter' standing cases all

17  become distinguishable.  This because none of them ever involved a plaintiff who

18  continuously visited a premises which continuously displayed "Whites Only" and/or "No

19  Irish Need Apply" type signage in its windows but otherwise demanded no admission

20  fee.[6]

21

22  [6] Credit Card Company's May 26, 2016, amendment to its Refusal of Service List, thereby at least temporarily ceasing its previous practice of discriminating against, *inter*

23  *alia*, bankruptcy lawyers (*see* Exhibit 1 to the Request for Judicial Notice filed herewith) is not a proper basis for the court's denying Bankruptcy Law Firm standing to litigate,

24  *inter alia*, whether, in light of Credit Card Company's continuing right to unilaterally modify that Refusal of Service List so as to someday resume discriminating against

25  Bankruptcy Law Firm, § 52(c) UL injunctive relief against Credit Card Company remains necessary.  *See De Funis v. Odegaard*, 416 U.S. 312, 318 (1974) (post-complaint

26  changes do not moot an action unless "'there is no reasonable expectation that the wrong

27  will be repeated.'... Otherwise, 'the defendant is free to return to his old ways....'"); *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1192–93 (N.D. Cal. 2007)

28  (Target's website modifications did not moot plaintiffs' claims).

5

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    The main lesson to be drawn from the above is that Bankruptcy Law Firm had no

2    obligation to click a Blue Button when doing so would have been a futile gesture in light

3    of Credit Card Company's previously well-established business practices of

4    (i) announcing its don't-come-in policies by way of its Refusal of Service List (SAC ¶¶ 6,

5    8); and (ii) then actually terminating anyone foolish enough to its ignore its Refusal of

6    Service List, click a Blue Button, and thereby actually subject themselves to the

7    termination which the Refusal of Service List had the chutzpah to advertise would result

8    from ignoring the illegal strictures on usage being promulgated by Refusal of Service List

9    (SAC ¶¶ 6, 11).

10    Contrary to *White* at *10, therefore, the accrual of § 52(a) UL and § 52(c) UL

11    standing based solely on exposure to Refusal of Service List is not just some "supposed

12    proposition."  Rather, exposure to Refusal of Service List is convincing evidence of just

13    how futile a gesture coming in despite being told not to would have been in the first place

14    under the circumstances alleged in this case.  SAC ¶ 11.

15    **II.    Based On A Not-Yet-Realized Threat Of Occupational Discrimination**

16    **Bankruptcy Law Firm Has Plausibly Alleged It Has Standing Under**

17    **§ 52 (a) UL And § 52(c) UL.**

18    We start with the issue of § 52(c) UL standing.  In that connection, the Second

19    Amended Complaint (Dkt 39) reads, in pertinent part, and at ¶ 36 at 8:24–9:1, as follows:

20    Bankruptcy Law Firm contends that Bankruptcy Law Firm has standing to sue for
equitable remedies as a person aggrieved by Credit Card Company's conduct, as

21    the term "aggrieved" is set forth in Civil Code section 52(c) and further explained
in *Scaduto v. Esmailzadeh,* 2007 U.S. Dist. LEXIS 103241 (C.D. Cal. 2007)

22    [*Scaduto*] …

23

24    Ironically, it was Credit Card Company that first attacked Bankruptcy Law Firm's

25    § 52(c) UL standing based on *Midpeninsula*'*s* holding that "[§ 52(c) UL] was intended to

26    provide a cause of action for injunctive relief to the same class of plaintiffs … entitled to

27    damages under [§ 52(a) UL]."  *See* Dkt 44 at 9:1–12, *quoting Midpeninsula*, 221 Cal.

28    App. 3d at 1384.  *Scaduto*, however, properly distinguished *Midpeninsula*—not because

6
Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint
*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    *Scaduto* quarreled with *Midpeninsula's* conclusion that §§ 52(a) UL and 52(c) UL were

2    only intended by the California legislature to give standing to the "same class of

3    plaintiffs"—but merely based on a much narrower ground.  Which was that *Midpeninsula*

4    had been concerned with only what it called an "organizational plaintiff" acting as the

5    representative party, whose members were not possibly affected by the discrimination at

6    issue in that case.  *See, e.g., Midpeninsula*, 221 Cal. App. 3d at 1387–88 (holding, *inter*

7    *alia*, that any organizational plaintiff has to be comprised of one or more members

8    directly affected by the discrimination at issue in the case in order to have standing under

9    § 52(c) UL).

10         *Scaduto*, by contrast, involved plaintiffs who pled they were faced with a possible

11    eviction due to a by-then-not-yet-realized invocation by a building owner of the Ellis Act

12    (Cal. Gov. Code §§ 7060 *et seq.*).  Which by-then-not-yet-realized invocation of the Ellis

13    Act was alleged as motivated by an already-in-place existing plan to replace, *inter alia*,

14    all of the plaintiffs with a homogeneous community of "wealthy Jewish people of Arabic

15    descent from Iran and Iraq."  2007 U.S. Dist. LEXIS 103241 at *4.

16         In light of these futuristic allegations (i) after first describing the issue of whether

17    "a threatened or anticipatory discriminatory … act" could possibly confer § 52(c) UL

18    standing as a matter of first impression (*id.* at *23) and (ii) after then noting that

19    ***"California courts instruct that the Unruh [Law] is to be given liberal, not strict,***

20    ***construction with a view to effect its object and promote justice."***  (***Emphasis*** added;

21    citations omitted.) (*id.* at *26), the *Scaduto* court found the plaintiffs ***were*** § 52(c) UL

22    persons aggrieved (*id.* at *27).

23         In the present case, the Second Amended Complaint alleges Robert White is a

24    bankruptcy lawyer who, in violation of Mr. White's "personal specific Unruh Law civil

25    rights to be free from occupational discrimination," Refusal of Service List threatened—

26    on pain of Mr. White's being subsequently terminated for breach of the Square Seller

27    Agreement—not "to accept payments [from] in connection with his business of being a

28    bankruptcy lawyer."  SAC ¶ 8.

7

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    Given what Mr. White's review of the "extensive PACER record in *shierkatz v.*

2    *Square Inc.*" (*see* SAC ¶11) demonstrated, i.e., that the threat of post-subscription

3    termination of any entity practicing bankruptcy law using Credit Card Company's service

4    to facilitate its business was no joke, Mr. White was just as much the victim of "a

5    threatened or anticipatory discriminatory … act" as any of the plaintiffs in *Scaduto* ever

6    were.  The key to all this obviously being *Scaduto's* holding that threatening to deprive

7    someone of their civil rights is just as much an offense against the Unruh Law as is

8    actually depriving someone of their civil rights.

9    *Scaduto*, of course, is neither a California Supreme Court nor a Ninth Circuit case.

10   Meaning that, if the court were willing to predict that the California Supreme Court

11   would not follow *Scaduto's* 'threat equals standing' holding if that same standing issue

12   were ever to come before it, then the court need not accept *Scaduto's* expansive view of

13   what constitutes proper standing under the Unruh Law.  *See Dimidowich v. Bell &*

14   *Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986).

15   In considering whether to accept or reject the holding in *Scaduto*, however, the

16   court should note that *Scaduto* has been cited with approval by the California Court of

17   Appeals as recently as 2015.  Thus, in *Flowers v. Prasad,* 238 Cal. App.4th 930, 943

18   (2015), it is said:

19   > [The Unruh Law] limits injunctive relief to [*inter alia*] persons … [who are]
   > confronted [by] a direct threat to [their Unruh Law] rights … see [*Scaduto* at] *24
20   > [tenants alleging discrimination by landlord and threatened with eviction, but not
   > yet evicted, were "persons aggrieved" for purposes of the Unruh Civil Rights
21   > Act].

22   A petition for review in *Flowers* was denied by the California Supreme Court on

23   October 21, 2015.  2015 Cal. LEXIS 8849.[7]

24

25

26

_____

27   [7] In *Rsui Indem. Co. v. Discover P&C Ins. Co.*, 2016 U.S. App. LEXIS 8025, *2–*3 (9th
     Cir. 2016) the Ninth Circuit noted that the court should consider decisions by

28   intermediate courts where a point of law has not been decided by a state's highest court.

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    What's more, the cases supporting *Scaduto's* main holding that "***the Unruh [Law]***

2 ***is to be given liberal, not strict, construction with a view to effect its object and promote***

3 ***justice***" are legion.  *Scaduto* itself cited several cases in support of its "liberal

4 construction" doctrine: *Winchell v. English*, 62 Cal. App. 3d 125, 128–29 (1976) and

5 *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1339 (N.D. Cal. 1994).  There are also

6 many California Supreme Court cases to the same effect.  *See, e.g., Munson v. Del Taco,*

7 *Inc.*, 46 Cal.4th 661, 666, 673 (2009); *Angelucci*, 41 Cal.4th at 167; *Koire v. Metro Car*

8 *Wash*, 40 Cal.3d 24, 28 (1985).

9    These California Supreme Court precedents are binding on this court.  *See*

10 *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) ("the views of the State's highest court

11 with respect to state law are binding on the federal courts."); *McKown v. Simon Prop.*

12 *Grp., Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012).  Moreover, this Court is also bound by

13 Ninth Circuit precedent recognizing the extreme liberality with which the Unruh Law is

14 to be construed.  *See Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1031 (9th Cir. 2003)

15 ("the California Legislature's clearly expressed intent [was] that the Unruh Act's

16 antidiscrimination provisions be read broadly"); *see also Martin v. Int'l Olympic Comm.*,

17 740 F.2d 670, 682 (9th Cir. 1984).[8]

18    Not only do *Scaduto* and *Flowers* confer § 52(c) UL standing on Bankruptcy Law

19 Firm based on the threat of future discrimination against Bankruptcy Law Firm evidenced

20 by Refusal of Service List; neither of those two cases hold that Bankruptcy Law Firm

21 must increase the threat such discrimination will pass into action by (i) clicking a Blue

22 Button; (ii) thereby giving up all rights of access to the courts; and (iii) ultimately

23 encouraging Credit Card Company to subject it to the same wrongful termination that

24 shierkatz RLLP has previously experienced.  Instead, *Scaduto* and *Flowers*

---

25 [8] Other federal trial courts in the Northern District of California have also recently noted
26 how liberally the Unruh Law should be construed.  *See J.F. v. New Haven Unified Sch.
Dist.*, 2014 U.S. Dist. LEXIS 55964 at *16 (N.D. Cal. 2014) ("The California Supreme
27 Court has stated that the Unruh Act should be interpreted 'in the broadest sense
reasonably possible'"); *Yates v. Bacco*, 2014 U.S. Dist. LEXIS 35340 at *43 (N.D. Cal.
28 2014) (same).

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    unambiguously permit Bankruptcy Law Firm to employ an ounce of prevention in lieu of

2    a pound of cure to put an immediate end to Credit Card Company's scofflaw behavior

3    here.

4          Next, and as was noted in the Quick Review, *supra*, at 2:18–22, all parties herein

5    have stipulated that the holding of *Midpeninsula* turns the slight wording differences that

6    exist between § 52(a) UL and § 52(c) UL into a distinction without a difference for

7    standing purposes.  *See* Dkt 44 at 9:1–12 (citing *Midpeninsula,* 221 Cal App. 3d at 1384).

8    Meaning that if Bankruptcy Law Firm is found to have standing to seek a § 52(c) UL

9    injunction (it does) then Bankruptcy Law Firm also necessarily has standing to seek

10   § 52(a) UL penalties.  Moreover, this syllogism would apply even if the Second

11   Amended Complaint has otherwise failed to properly allege that Bankruptcy Law Firm

12   has "at least attempted to subscribe" to Credit Card Company's service as otherwise

13   required by *White* at *10.

14   **III.     Bankruptcy Law Firm Has Plausibly Alleged That It "At Least**

15   **          Attempted To Subscribe To Credit Card Company's Service."**

16         We begin by summarizing *White's* description of *Surrey* as follows:

17   •    Steven Surrey visited a matchmaking service named TrueBeginnings,

18        intending to become a subscriber.  *White* at *8–*9.

19   •    However, when he learned that TrueBeginnings charged a males-only

20        subscription fee—and without first paying the fee and thus without first

21        becoming a subscriber—Mr. Surrey brought a putative class action against

22        TrueBeginnings alleging gender-based price discrimination.  *Id.*

23   •    Mr. Surrey's filing suit without his first paying the discriminatory fee

24        demanded by TrueBeginnings and thereby becoming a True Beginnings'

25        subscriber, meant Mr. Surrey had no § 52(a) UL standing to sue

26        TrueBeginnings.  *Id.* at *9–*10.

27         As the court is doubtless aware, a crime which requires proof of *mens rea* cannot

28   be proved up without a prosecutor's presenting substantial evidence of the perpetrators

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1   intent in doing or not doing some act.  This is as true of the crime of attempt as it is of

2   any other type of *mens rea* crime.  *See* 1 Witkin, California Criminal Law, *Elements*, § 57

3   (4th ed. 2012) ("The crime of attempt requires a specific intent even though the crime

4   attempted does not."); *People v. Bishop* (*Bishop*), 202 Cal. App. 3d 273, 284 (1988)

5   ("[S]light acts done in furtherance of [a] design will constitute an attempt, and the courts

6   should not destroy the practical and common-sense administration of the law with

7   subtleties as to what constitutes [an attempt]").

8           Numerous paragraphs of the Second Amended Complaint, *e.g.*, SAC ¶¶ 9–20, are

9   devoted to alleging both Mr. White's design in causing Bankruptcy Law Firm to do what

10  it has so far done by way of its directly (but so far ineffectually) attempting to become a

11  Credit Card Company subscriber.  This specifically includes (in addition to allegations of

12  its daily visits to the Square Website [SAC ¶ 18]), further allegations of Bankruptcy Law

13  Firm's delivery of an email letter to Credit Card Company *prior* to filing the Second

14  Amended Complaint (SAC ¶ 21).  Which email letter requested that Credit Card

15  Company permanently cease and desist from violating the Unruh Law in order to

16  facilitate Bankruptcy Law Firm's next becoming a Credit Card Company subscriber in its

17  capacity as a bankruptcy law practitioner.  *Id.*  With that last request next silently refused

18  by Credit Card Company *prior* to Bankruptcy Law Firm's filing the Second Amended

19  Complaint.  *Id.*

20          In response, Credit Card Company asserts, without authority, that criminal law

21  distinctions between intent and design as well as criminal law distinctions between

22  attempt and act, are all irrelevant for purposes of determining § 52 UL standing in this

23  case.  *See* Dkt 44 at 7 n.2.  Any suggestion the court is entitled to disregard Bankruptcy

24  Law Firm's intent allegations in determining whether an attempt has been properly

25  alleged here is simply an invitation to error.  *See* 5 Witkin, Summary of California Law,

26  *Torts*, § 381, p. 598 (10th ed. 2005) ("In tort actions [involving claims of attempt to

27  commit an injury] … the courts usually assume that [the] Penal Code definitions and

28  related criminal cases are applicable.").

11

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    This, of course and no doubt, still leaves the court's discretion to disregard

2    Bankruptcy Law Firm's intent allegations on implausibility grounds.  *See Ashcroft v.*

3    *Iqbal* (*Iqbal*), 556 U.S. 662, 680-681 (2009).  When it comes to the court's exercise of its

4    *Iqbal* discretion, Bankruptcy Law Firm merely urges that, in all fairness, the intent

5    allegations made in the Second Amended Complaint neither are (nor should they be

6    judged to be) implausible.

7    Thus, as the Second Amended Complaint makes clear, Bankruptcy Law Firm

8    really does intend to click a Blue Button.  SAC ¶¶ 10–20.  It just doesn't want to click a

9    Blue Button until it has exhausted all reasonable efforts to first obtain a § 52(c) UL

10   injunction.  This to minimize the continuing threat of occupational discrimination it will

11   otherwise face once it clicks a Blue Button and thereby permanently waives its right of

12   access to the courts.  SAC at ¶ 14.  There is nothing at all implausible about such intent

13   allegations and holding them to be sufficiently implausible as to require dismissal of this

14   case would be an abuse of the court's *Iqbal* discretion.  Which *Iqbal* discretion, with all

15   due respect to the court, is not unlimited.[9]

16   Next, and as far as *White* at *10 is concerned, no Irishman encountering a "No

17   Irish Need Apply" sign in a window may rush to his lawyer's office and get that lawyer

18   to put a $4,000 Unruh Law case on file.  Assuming, *arguendo*, that *White's* take on what

19   circumstances confer § 52(a) UL or § 52(c) UL standing is correct (it isn't), *White* still

20   doesn't say what that Irishman can possibly do to get § 52(a) UL or § 52(c) UL standing.

21   The answer, however, seems obvious.

22

23   [9] Intent is an issue of fact.  *Hopper v. City of Pasco*, 241 F.3d 1067, 1091 n.2 (9th Cir.
     2001) ("courts almost universally view [intent] as a factual issue.").  *Iqbal* acknowledged,
24   "[w]hen there are well-pleaded factual allegations, a court should assume their veracity."
     *Iqbal,* 556 U.S. at 678.  *See also Castle v. Eurofresh, Inc.*, 731 F.3d 901, 905 (9th Cir.
25   2013) ("All well-pleaded allegations of material fact in the complaint are accepted as true
     and are construed in the light most favorable to the nonmoving party.")  *Wilson v.*
26   *Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (same).  "The standard at this
     stage of the litigation is not that plaintiff's explanation must be true or even probable. The
27   factual allegations of the complaint need only 'plausibly suggest an entitlement to
     relief.'" *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).
28

12

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1    The law is that any persons confronted by discrimination in connection with a

2    public accommodation may always (i) present themselves as being the subject of the

3    discrimination in question and (ii) demand that the discrimination stop so that the victim

4    of such discrimination can thereafter enjoy the public accommodation in question like

5    anyone else.  *See*, e.g., *Hutson v. Owl Drug Co.* (*Hutson*), 79 Cal. App. 390, 391–92

6    (1926).  If the illegally discriminating party refuses to grant such public accommodation

7    on a non-discriminatory basis despite receiving such a demand then a victim of

8    discrimination can undoubtedly get a proper $4,000 Unruh Law case on file.  *Id.*

9    In *Hutson*, one Lela Hutson—an African-American woman—visited a Los

10   Angeles drug store which, given the way drug stores work, didn't try to charge her any

11   admission fee.  Once seated at the store's counter, and again without paying in advance,

12   she ordered a sandwich from one Mr. Tucker, who was then an Owl Drug Co. employee.

13   He silently refused to serve her.  After she failed to leave the counter, he called her a

14   racial epithet and physically struck her.  *Id.* at 392.

15   Owl Drug Co. was later held liable as an entity for $500—*not* for general

16   damages on account of Mr. Tucker's *post-facto* verbal and physical abuse of Ms. Hutson

17   (this because the Court of Appeal found insufficient evidence that Mr. Tucker had acted

18   within the normal course and scope of his employment when he assaulted and battered

19   Ms. Hutson)—but *only* for statutory damages on account of Mr. Tucker's having violated

20   the Unruh Law in his capacity as an Owl Drug Co. employee when he silently refused to

21   serve Ms. Hutson "solely on account of her race."  *Id.* at 393.

22   Unlike anything done to anyone in either *Angelucci* or *Surrey*, but much like Mr.

23   Tucker's behavior towards Ms. Hutson as described in *Hutson*, Credit Card Company—

24   by way of its publishing Refusal of Service List—effectively told Bankruptcy Law Firm

25   'we won't serve you here.'  What's more, and again like Mr. Tucker's behavior as

26   described in *Hutson*, what Credit Card Company did wrong was based solely on account

27   of Bankruptcy Law Firm's status as a bankruptcy practitioner practicing its lawful

28   occupation as such.  SAC ¶ 6.

13

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1       Nothing in either *Angelucci* or *Surrey* holds that Bankruptcy Law Firm didn't

2   properly obtain § 52(a) UL and § 52(c) UL standing by—as Ms. Hutson did—asking, in

3   person, to be given the public accommodation of a Credit Card Company subscription

4   free from discrimination.  In Ms. Hutson's case, this meant her asking, without tendering

5   advance payment, for food to be served her the same way whites were being served food.

6   *Hutson* at 392–93.  Which request for equal or non-discriminatory service was silently

7   refused by Mr. Tucker, thereby creating the then equivalent of § 52(a) UL liability for

8   Owl Drugs Co.  *Id.* at 391–92.

9       Here, by delivering an email letter to Ms. Bal, Bankruptcy Law Firm effectively

10  visited Credit Card Company's public accommodation, which public accommodation

11  (unlike *Surrey* but like *Hutson*) did not charge an admission fee.  The email letter asked

12  that Credit Card Company—despite the presence of the 'we won't serve you here'

13  admonition on its web site—to nonetheless provide Bankruptcy Law Firm with a public

14  accommodation free from discrimination.  SAC ¶ 20.

15      In Bankruptcy Law Firm's case this meant its asking, without its tendering any

16  advance payment, that it be granted a Credit Card Company subscription free from

17  discrimination so it could enjoy that public accommodation in the same way persons who

18  were not on Refusal of Service List were able to use their subscriptions to facilitate their

19  practicing their own particular lawful occupations.  SAC ¶ 20.  Which request was then

20  silently refused by Credit Card Company.  SAC ¶ 21.  Thus conferring § 52(a) UL and

21  § 52(c) UL standing on Bankruptcy Law Firm on the exact same basis Ms. Hutson had

22  previously been held to have such standing.  *See also Stevens v. Optimum Health Inst*.,

23  810 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) (case where a blind woman was told she

24  couldn't use either a guide dog or a white cane to facilitate attendance at a conference but

25  would only be admitted if she brought a sighted human companion with her.  Despite the

26  fact she never signed up for the conference or otherwise presented herself there, the court

27  nonetheless held Unruh Law had been violated); *Alch v. Superior Court* (*Alch*), 122 Cal.

28  App. 4th 339, 388 (2004) (age discrimination case brought by TV and movie

14

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1   screenwriters against talent agencies pursuant, *inter alia*, to the Unruh Law which

2   claimed that the agencies refused to represent older writers based because of age.  § 52(a)

3   UL standing found based on *Teamsters*, *supra*, which *Alch* described as making it clear

4   that "deterred applicants are not precluded from seeking relief from discrimination,

5   although the burden of obtaining individual relief will not be an easy one."); *Rolon v.*

6   *Kulwitzky*, 153 Cal. App. 3d 289 (1984) (§ 52(a) UL standing found where no payment of

7   any advance fee was required by a restaurant which otherwise refused to seat a lesbian

8   couple in a private booth based on a policy of reserving such private booths for use only

9   by opposite-sex couples).

10   **Conclusion**

11      Accepting Credit Card Company's no click/no standing defense would mean

12   finding that—regardless of Bankruptcy Law Firm's intent—its doing one act and only

13   one act (clicking a Blue Button) would allow it to meet *White* at *10's requirement that

14   the Second Amended Complaint plead that "[Bankruptcy Law Firm] at least have

15   attempted to subscribe to [Credit Card Company's] services" to have § 52(a) UL and

16   § 52(c) UL standing.

17      Not only would such a ruling be contrary to what is usually the very flexible

18   common law of attempt, it would also be contrary to both the futile gesture and threat

19   equals standing approaches to § 52(a) UL and § 52(c) UL standing which are the result of

20   previous courts having liberally construed Unruh Law standing requirements precisely as

21   such courts were instructed to do by both the Ninth Circuit and the California Supreme

22   Court.  This court should not roll back the clock by adopting the unrealistically narrow

23   view of § 52(a) UL and § 52(c) UL standing being urged by an Unruh Law violator with

24   no conceivable defense to this case on its merits.

25

26

27

28

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint
*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST

1   Dated: July 11, 2016                    McGRANE PC
                                           BERLINER COHEN LLP
2

3                                          By: /s/ William McGrane
                                                 William McGrane
4                                          Attorneys for Plaintiff Robert White, an individual, and
5                                          all others similarly situated

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bankruptcy Law Firm's Memorandum of Points and Authorities in Opposition to Credit Card Company's
Motion to Dismiss Second Amended Complaint

*White et al. v. Square, Inc.*, Case No.  3:15-cv-04539-JST