DAVID H. KRAMER, State Bar No. 168452
SARA E. ROWE, State Bar No. 295353
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: srowe@wsgr.com

COLLEEN BAL, State Bar No. 167637
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: cbal@wsgr.com

*Attorneys for Defendant Square, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT E. WHITE,<br><br>   Plaintiff,<br><br>   v.<br><br>SQUARE, Inc., a Delaware corporation,<br><br>   Defendant. | Case No. 3:15-cv-04539-JST<br><br>**SQUARE, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: September 8, 2016<br>Time: 2:00 p.m.<br>Courtroom: 9 – 19th Floor<br>Before: Hon. Jon S. Tigar |

## I. INTRODUCTION

Square explained in its opening brief that White lacks standing to sue under the Unruh Act because he is not a victim of any alleged discrimination. The allegations of the Second Amended Complaint ("SAC") make clear that he elected not to subscribe to the Square service, and thus he was not, and could not possibly have been, subject to the policy that he (erroneously) claims is discriminatory. Under established California law and this Court's prior Order granting Square's previous motion to dismiss, to have standing under the Unruh Act, a plaintiff must have actually sought to avail itself of the defendant's services and suffered discrimination in the process. White has not done so.

Instead, White and his counsel continue their efforts to manufacture an Unruh Act claim where none exists. This time, they have seized on the "futile gesture" doctrine, first recognized in the U.S. Supreme Court's Title VII *Teamsters* decision. That is a doctrine under which standing may exist under certain federal discrimination statutes for plaintiffs alleging that they were "deterred" from seeking to avail themselves of a defendant's services. White's opposition brief goes on at length about how he was "deterred" from subscribing to the Square service. But the futile gesture doctrine simply does not apply to the Unruh Act. California courts have expressly rejected the theory that a person who has not actually suffered alleged discrimination has Unruh Act standing. Indeed, the lone case White cites that purports to apply the analysis of *Teamsters* to the Unruh Act has been criticized by the California Court of Appeal for misconstruing the Unruh Act standing requirements. Moreover, the case predates the *Surrey* decision on which this Court largely based its prior Order dismissing White's claims. Thus, White's attempt to engraft the futile gesture doctrine onto the Unruh Act is itself a futile gesture.

White's other arguments merely rehash the premise that this Court has already rejected — that he need not have suffered any actual injury to establish standing. Accordingly, the SAC should be dismissed with prejudice.

## II. ARGUMENT

### A. The Futile Gesture Doctrine Does Not Apply to Unruh Act Claims

Where, as here, a federal court is deciding an issue of state law and there is relevant precedent from the state's intermediate appellate court, the federal court must follow that precedent unless it finds convincing evidence that the state's supreme court likely would not follow it. *See Toomer v. United States*, 615 F.3d 1233, 1237 n.1 (9th Cir. 2010); *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007). California law uniformly requires that, to have standing to state an Unruh Act claim (seeking damages and/or an injunction), a plaintiff must have been personally injured by a defendant's discriminatory conduct. This means that a defendant's allegedly discriminatory policy must actually have been applied to the plaintiff. *See* Order Granting Motion to Dismiss First Amended Complaint ("Order") at 5-7; Motion to Dismiss SAC ("MTD") at 5-7. In particular, the California Court of Appeal's *Surrey* and *Orloff* decisions (among others) establish that plaintiffs who claim merely to have been "deterred" from seeking to avail themselves of a defendant's services do not have standing to assert an Unruh Act claim. *See* MTD at 6-7. The California Supreme Court's decision in *Angellucci* — to the extent not also controlling on the issue — at a minimum confirms that it would rule accordingly. *See Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007) ("[S]tanding under the [Unruh] Act extends to persons 'actually denied full and equal treatment by a business establishment' — that is, to 'victims of the discriminatory practices.'" (*citing Midpeninsula Citizens For Fair Housing v. Westwood Inv'rs*, 221 Cal. App. 3d 1377, 1383, 1386 (1990))). White does not and cannot dispute this established standard or that California law governs the current dispute. *See* Opp. at 8. Thus, the federal court decisions he cites that conflict with California authority or that apply to other statutes are irrelevant to the analysis. *See, e.g.*, Opp. at 4, n.5.

White argues that the futile gesture doctrine applied by the U.S. Supreme Court to a Title VII employment discrimination case in *International Brotherhood of Teamsters v. United States* (*Teamsters*), 431 U.S. 324 (1977), "precludes" Square's "standing defense" because it recognizes that "deterred" employees may have suffered discrimination even though they did not

actually apply for a promotion. Opp. at 3.[1]  White is mistaken.  The futile gesture doctrine is a creature of federal law that has been applied to some federal antidiscrimination statutes, including the Americans with Disabilities Act ("ADA").  But those statutes are not at issue in this case.

As a matter of law, the futile gesture doctrine does not apply to the Unruh Act.  To the contrary, California authority makes clear that a person who was simply "deterred" from seeking to avail himself of the defendant's services does *not* have standing to sue under the Unruh Act because he was not personally injured.  Thus in *Surrey*, the male plaintiff who claimed that he was deterred from subscribing to a dating service when he learned that the service would charge him a higher subscription price than a woman had no standing to sue.  Likewise, the plaintiff in *Orloff*, who was deterred from seeking to re-enter the defendant racetrack by a warning that he would be rejected if he ever returned, also lacked standing to sue.[2]  *See* MTD at 6-7.

The fact that some federal anti-discrimination statutes may be found to have a different or more lenient standing requirement does nothing to alter California Unruh Act law.  Indeed, the California Court of Appeal expressly rejected that notion in *Midpeninsula*.  There, a plaintiff analogously pointed to the more lenient standing requirement of the Fair Housing and Employment Act to argue that it should be deemed to have standing under the Unruh Act.  The Appeal Court unambiguously rejected the notion that interpretation of a federal anti-discrimination statute could affect standing analysis under the Unruh Act:

> The [U.S.] Supreme Court's interpretation of a federal statute's standing requirements does not determine the scope of standing provided by a California statute.  Standing requirements will vary from statute to statute based upon the intent of the Legislature and the purpose for which the

---

[1] Standing, of course, is not a defense.  It is something that Plaintiff must prove in order to state a claim.

[2] Not only does being "deterred" fail to state a claim under the Unruh Act, White's contention that subscribing to the Square service would have been a "futile gesture" fails for the additional reason that it is implausible.  White alleges that he carefully reviewed the docket in the *Shierkatz* case (FAC ¶ 9), and thus he is aware that Shierkatz not only successfully subscribed to the Square service, but also used it for nearly two years.  *See* First Amended Complaint ¶¶ 6-7, *shierkatz, RLLP v. Square, Inc.*, No. 3:15-cv-02202-JST, 2015 U.S. Dist. LEXIS 169628  (N.D. Cal. July 15, 2015).

> particular statute was enacted. . . . In California, however, the state Legislature has specifically conferred standing to sue under the Unruh Act upon the victims of discriminatory practices and certain designated others . . . The California courts have not seen fit to endorse a more expansive interpretation of these standing requirements, and we decline to do so in this case.

*Midpeninsula*, 221 Cal. App. 3rd at 1385-1386 (affirming decision that nonprofit housing organization was not "a person aggrieved" and therefore lacked standing to sue under the Unruh Act because it had not actually suffered discriminatory treatment). The stricter standing requirement of the Unruh Act makes sense for a variety of reasons, including that it confers standing only on those who are "aggrieved" and whose rights have been "denied," and the fact that — unlike some federal anti-discrimination statutes that require proof of injury and actual damages — it provides for statutory damages. *See* Cal. Civ. Code §§51, 52.

The only Unruh Act case cited by White that purports to adopt the reasoning of *Teamsters* is *Arnold v. United Artists Theatre Circuit, Inc.,* 866 F. Supp. 433 (N.D. Cal. 1994) (Henderson, J.). In *Arnold,* disabled plaintiffs who had not actually attended the defendant's theaters but alleged instead that they had been "deterred" from doing so by their knowledge of the theaters' failure to conform to disability access laws brought a claim for damages under the Unruh Act. The defendant moved to dismiss for lack of standing. The court, erroneously believing it was deciding an issue of "first impression," followed the reasoning of *Teamsters* to deny the defendant's motion. 866 F. Supp. at 434-35, 438-39.

*Arnold* is inconsistent with the California cases that existed at the time of its decision (such as *Orloff* and *Midpeninsula*, which were not cited) as well as numerous California cases that have been subsequently decided (such as *Surrey* and *Angelucci*), all of which require an Unruh Act plaintiff to have personally suffered discrimination to bring a claim. And in fact, in *Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1227 (2009), the California Court of Appeal disavowed *Arnold*, criticizing it for its failure to comply with California law and stating that it would have denied standing to the *Arnold* plaintiff. *Id.* at 1227.[3] Thus, *Arnold* is no help to White.

---

[3] *Reycraft* addressed standing to seek money damages under Cal. Civ. Code § 54.3 of the California Disabled Persons Act ("DPA"). Like the Unruh Act, the DPA grants standing to sue
(continued...)

Finally, White suggests that the Ninth Circuit's citation to *Arnold* with approval in *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000) is somehow significant to this Court's analysis. Opp. at 3. It is not. The *Botosan* court recognized that to have Unruh Act standing, a disabled plaintiff must actually seek to avail himself of the defendant's services and be denied access, and that the plaintiff before it had in fact done so. *Id.* at 830, 835. Thus, the Ninth Circuit was not deciding a "deterred" plaintiff case but rather an "injured" plaintiff case, and its reference to *Arnold's* "deterred" plaintiff decision was dicta. More importantly, the California Court of Appeal subsequently criticized the *Botosan* court's citation to *Arnold* for precisely these reasons, and explicitly called it out for its inconsistency with California law. *See Reycraft*, 177 Cal. App. 4th at 1227.[4]

### B. The *Scaduto* Case Does Not Help White

In a second effort to eliminate the well-established standard for standing under the Unruh Act, White relies on another federal court decision, *Scaduto v. Esmailzadeh*, No. CV 07-4069-GW (AJWx), 2007 U.S. Dist. LEXIS 103241 (C.D. Cal. Aug. 10, 2007), arguing that he should be deemed to have standing as someone whose injury is "not yet realized." Opp. at 6-9. Again, he is mistaken. In *Scaduto*, the plaintiffs were apartment tenants who alleged that the defendant apartment owner was discriminating against them by seeking to evict them and to convert their apartments to luxury condominiums. 2007 U.S. Dist. LEXIS 1032141 at *5. The court held that the tenants had Unruh Act standing, even though the evictions were not yet fully realized, where

---

(...continued from previous page)

for damages only to those persons whose rights have been "denied." *See* Cal. Civ. Code § 54.3. Thus, as reflected in *Reycraft*, the Unruh Act standing cases also define the scope of standing for persons seeking damages under the DPA. *See Reycraft*, 177 Cal. App. 4th at 1220-1224.

[4] White also argues that he should be deemed to have standing because California courts adopt a "liberal construction" when interpreting the Unruh Act. Opp. at 9. That argument ignores that the California courts have directly considered the scope of standing under the Unruh Act and determined that it does not apply to persons like him who have not suffered discrimination. Indeed, in *Angelucci*, the California Supreme Court expressly referenced the "liberal construction" of the Unruh Act while also confirming its agreement with the California Court of Appeal that "'standing under the [Unruh] Act extends to persons 'actually denied full and equal treatment by a business establishment' — that is, to 'victims of the discriminatory practices.'" *Angelucci* at 167, 175 (citing *Midpeninsula*, 221 Cal. App. 3d at 1383, 1386).

1  the owner had started the eviction process, including by filing Ellis Act notices (which were
2  required to remove their apartments from the rental market). *Id*.

3  White is not remotely like the *Scaduto* plaintiffs — he is not a subscriber to the Square
4  service, much less one whose account is in the process of being terminated for an alleged
5  discriminatory reason. The hypothetical "injury" he faces is from a policy that has never been
6  applied to him. *Scaduto* is thus irrelevant. Accordingly, the fact that it was cited by the
7  California Court of Appeal in *Flowers v. Prasad*, 238 Cal. App. 4th 930 (2015), does not suggest
8  a possibility that White would be found to have standing under California law, as he claims. *See*
9  Opp. at 8. If anything, *Flowers* only emphasizes White's lack of standing, as it distinguishes
10 people who have actually suffered discrimination (and therefore may have Unruh Act standing)
11 from those who are only "potentially aggrieved" (and therefore lack standing). *See Flowers*, 238
12 Cal. App. 4th at 943.

### C. White's Conduct Does Not Establish Standing

#### i. Visiting The Square Website Did Not Establish Standing

White continues to argue that his visiting the Square website and thereby being exposed
to its alleged discriminatory termination policy is sufficient to establish standing because, unlike
*Surrey,* Square does not charge "admission" to sign up for its service. Opp. at 5. That argument
misses the point in two key respects. First, White never addresses the fact that mere "awareness"
of an alleged discriminatory policy does not confer Unruh Act standing. *See* MTD at 7. Second,
the California cases all make clear that — whatever the alleged discrimination — the plaintiff
must present himself and seek to utilize the defendant's service in the manner it is offered to the
public, and actually suffer discrimination in the process. Thus, in *Surrey*, the plaintiff did not
suffer discrimination because he did not pay the alleged discriminatory price. In *Orloff*, the
plaintiff was not improperly denied admission to the racetrack because he did not present himself
to the racetrack and meet the terms required for admission. In *Midpeninsula*, the nonprofit
housing plaintiff (as opposed to its clients) did not suffer housing discrimination. And in
*Reycraft*, the disabled plaintiff was not improperly denied access to the defendant's pool under

the Disabled Persons Act because she did not register as a guest and pay the admission fee. *See* MTD at 5-7; *Reycraft*, 177 Cal. App. 4th at 1220-1226; *see also supra* n.3.

The fact that White was not required to pay an admission fee to visit the Square website is of no moment. White did not subscribe to the service by signing up in the manner offered by Square; the alleged discriminatory termination policy was not (and could not possibly have been) applied to him. He therefore lacks standing under the Unruh Act.

### ii.  White Did Not Attempt To Subscribe To The Square Website

Apparently in response to the Court's reference in its Order to the fact that White did not "attempt" to subscribe to the Square service, White argues that he did attempt to subscribe because he visited the website with the intent to subscribe. Opp. at 10-11. The argument is meritless. White alleges in the SAC that upon visiting the Square website, he *chose not to subscribe to the Square service* in order to avoid being subject to Square's allegedly discriminatory termination policy. *See* SAC ¶14. Thus, by White's own admission, he did not attempt to subscribe. He thus remains identically situated to the *Surrey* plaintiff who claimed that he initially intended to subscribe to the defendant's online dating service, but ultimately chose not to subscribe in order to avoid the gender-based subscription price. Neither has standing for an Unruh Act claim. *See Surrey*, 168 Cal. App. 4th at 416-19.

### iii.  Letters Between Counsel Do Not Establish Standing

Finally, White contends that having his counsel send a letter to Square's counsel demanding that Square "cease and desist from violating" White's rights was sufficient to confer standing because all one must supposedly do to establish standing is "(i) present themselves as being the subject of the discrimination in question and (ii) demand that the discrimination stop." Opp. at 13. That is sophistry. In every case in which standing under the Unruh Act has been found wanting, the plaintiff ultimately sought through counsel to stop the alleged discrimination. Plainly, a letter from a lawyer at some point is not enough for standing.

The cases cited by White only emphasize the error in his position, as each of the plaintiffs with Unruh Act standing actually suffered some form of discrimination, while he has not. Thus in

*Huston*, the plaintiff sought service at a lunch counter and was denied service on the basis of her race, and in *Rolon*, the plaintiff was denied seating in the main part of the restaurant on account of her sexual orientation. See *Rolon v. Kulwitzky*, 153 Cal. App. 3d 289 (1984); *Huston v. Owl Drug Co.*, 79 Cal. App. 390 (1926).[5] These cases do not remotely suggest that simply showing up and asking not to be discriminated against establishes standing.

## CONCLUSION

The premise of this lawsuit — that Square unlawfully discriminates by declining to offer payment processing services to those who present credit risks — is meritless. Equally meritless is the notion that someone who failed even to seek to use Square's services has standing to challenge Square's legitimate business practices. Having failed to allege that he was the victim of any discrimination, White lacks standing under the Unruh Act, and his case should be dismissed with prejudice.

DATED: July 27, 2016

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Colleen Bal*
     Colleen Bal

*Attorneys for Defendant Square, Inc.*

---

[5] In neither of the other two cases cited by White was Unruh Act standing even at issue. In *Stevens v. Optimum Health Institute,* 810 F. Supp. 2d 1074 (S.D. Cal. 2011), the court granted summary judgment to plaintiff on her theory that the defendant's refusal to allow her to attend its health facility without a guide dog fell within the scope of discrimination covered by the Unruh Act, but the court never addressed Unruh Act standing and thus it appears not to have been raised by the defendant. 810 F. Supp. 2d at 1083. The court also did not address Unruh Act standing in *Alch v. Superior Court,* 122 Cal. App. 4th 339 (2004), as White contends. Rather, the court only mentioned standing in the context of the employees' Fair Employment and Housing Act claims. 122 Cal. App. 4th at 383, 394-95.