UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ROBERT E. WHITE, | |
|---|---|
| Plaintiff, | Case No. 15-cv-04539-JST |
| v. | **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| SQUARE, INC., | |
| Defendant. | Re: ECF No. 44 |

Plaintiff Robert E. White brings this purported class action against Defendant Square, Inc. ("Square"), alleging that Square violates the California Unruh Civil Rights Act ("Unruh Act") by prohibiting certain types of businesses from using its services. Before the Court is Square's Motion to Dismiss Second Amended Complaint. ECF No. 44. The motion will be granted with prejudice.

**I.   BACKGROUND**

   **A.   Factual Background**

Defendant Square provides a service which enables individuals and businesses "to accept electronic payments without themselves directly opening up a merchant account with any Visa or MasterCard member bank . . . ." ECF No. 39 ¶ 5 (Second Amended Complaint). Plaintiff White is the principal of a law firm and "actively practices bankruptcy law on behalf of his creditor clients." Id. ¶ 1. White "is a personal friend and business colleague of Jeremy Katz, a member of the State Bar and a partner in [S]hierkatz, RLLP." ECF No. 20 ¶ 8 (First Amended Complaint). Shierkatz is the plaintiff in the related case of Shierkatz RLLP v. Square, Inc., No. 15-cv-02202-JST (N.D. Cal.) (filed on May 15, 2015).

White "read this District Court's file in the [Shierkatz case] and thereby became aware of" Section 6 of Defendant Square's Seller Agreement. ECF No. 20 ¶ 9. As of December 21, 2015,

Section 6 of the Square Seller Agreement provided:

> By creating a Square Account, <u>you . . . confirm that you will not accept payments in connection with the following businesses or business activities</u>: (1) any illegal activity or goods; (2) buyers or membership clubs, including dues associated with such clubs, (3) credit counseling or credit repair agencies, (4) credit protection or identity theft services, (6) infomercial sales, (7) internet/mail order/telephone order pharmacies or pharmacy referral services (where fulfillment of medication is performed with an internet or telephone consultation, absent a physical visit with a physician including re-importation of pharmaceuticals from foreign countries), (8) unauthorized multi-level marketing businesses, (9) inbound or outbound telemarketers, (10) prepaid phone cards or phone services, (11) rebate based businesses, (12) up-sell merchants, (13) bill payment services, (14) betting, including lottery tickets, casino gaming chips, off-track betting, and wagers at races, (15) manual or automated cash disbursements, (16) prepaid cards, checks, or other financial merchandise or services, (17) sales of money-orders or foreign currency, (18) wire transfer money orders, (19) high-risk products and services, including telemarketing sales, (20) automated fuel dispensers, (21) adult entertainment oriented products or services (in any medium, including internet, telephone, or printed material), (22) sales of (i) firearms, firearm parts or hardware, and ammunition; or (ii) weapons and other devices designed to cause physical injury[,] (23) internet/mail order/telephone order cigarette, tobacco or vaporizer sales, (24) drug paraphernalia, (25) occult materials, (26) hate or harmful products, (27) escort services, or (28) <u>bankruptcy attorneys or collection agencies engaged in the collection of debt.</u>

ECF No. 39 ¶ 6 (emphasis added).

After reading this portion of Square's Seller Agreement, White "was . . . dissuaded from seeking to become a [Square] customer given the fact his law practice area is similar to that of [Shierkatz RLLP] and, as such, [Plaintiff's law firm] falls within Category 28 of" Section 6. ECF No. 22 ¶ 9. White then "formed the strong, definite and specific intent to attempt to have [his law firm] become . . . a [Square] subscriber without [his law firm's] ever once submitting itself to [Square's alleged misconduct]." ECF No. 39 ¶ 10. Evidencing this intent, White alleges that he "obtain[ed] and then carefully review[ed] portions of the extensive PACER record in <u>shierkatz RLLP v. Square, Inc.</u>," id. ¶ 11; "personally visit[ed] Square[']s Website," id. ¶ 12; refused to "click[] the link marked 'Continue' on Square[']s website," id. ¶ 14; "employ[ed] legal counsel to investigate [White's] bringing legal action against [Square]," id. ¶ 15; "instruct[ed] said legal counsel to sue [Square]," id. ¶ 16; "continuously visit[ed] [Square's] website beginning on January

1, 2016, and on each calendar day thereafter," id. ¶ 18; and "communicat[ed] a formal demand on [Square] that it . . . immediately and permanently agree to cease and desist from violating [his] Unruh Law civil rights to be free from . . . occupational discrimination," id. ¶ 20.

### B. Procedural History

On October 1, 2015, White filed this putative class action against Square, raising a single claim under California's Unruh Civil Rights Act. ECF No. 1. On December 21, 2015, White filed a First Amended Complaint ("FAC"), seeking to represent a class of "all Persons – other than persons who fall within Category 1 of [Section 6] – who have ever had their Accommodations terminated by [Square] based on their violation of [Section 6] or who have ever been dissuaded from seeking Accommodations from [Square] based on their unwillingness to violate [Section 6]." ECF No. 20 ¶ 11. On April 19, 2016, the Court granted Square's motion to dismiss the FAC. ECF No. 38. On April 29, 2016, White filed his Second Amended Complaint ("SAC"). ECF No. 39. On June 10, 2016, Square filed a motion to dismiss the SAC, ECF No. 44, which motion the Court now considers.

## II. JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Minimal diversity exists here because Defendant, a Delaware corporation with its principal place of business in San Francisco, CA, is a citizen of Delaware and California for diversity purposes and at least one class member is alleged to be a citizen of a state other than Delaware and California. ECF No. 39 ¶¶ 5, 24. Additionally, White alleges that "there are several hundred thousand Class members." Id. ¶ 27. Because the minimum statutory damage award under the Unruh Act is $4,000, Cal. Civ. Code § 52, White has pleaded that the amount in controversy exceeds $5,000,000, as required by 28 U.S.C. 1332(d)(2).

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533–34 (9th Cir. 1984). "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "[F]ailure to allege statutory standing results in failure to state a claim on which relief can be granted . . . ." Petzchke v. Century Aluminum Co., 729 F.3d 1104, 1109 (9th Cir. 2013).

## IV. DISCUSSION

### A. The Unruh Civil Rights Act

The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Section 51.5(a) of the Act further provides that "[n]o business establishment of any kind whatsoever shall discriminate against . . . or refuse to . . . contract with . . . any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, . . . because the person is perceived to have one or more of those characteristics." Section 52(a) provides that "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the

4

court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6."

The California Supreme Court has stated: "That the [Unruh A]ct specifies particular kinds of discrimination—color, race, religion, ancestry, and national origin—serves as illustrative, rather than restrictive, indicia of the type of conduct condemned." In re Cox, 3 Cal. 3d 205, 212 (1970). California courts have held that "arbitrary occupational discrimination is prohibited under the Unruh Act." Sisemore v. Master Fin., Inc., 151 Cal. App. 4th 1386, 1406 (2007) (citing Long v. Valentino, 216 Cal. App. 3d 1287, 1298 (1989) (stating that, under the Unruh Act, "police officers . . . may not be refused service in a restaurant, denied an apartment, or ejected from a public meeting merely because of their occupation, whether working a shift or on vacation")).

**B.  Defendant's Motion to Dismiss**

The Court previously granted Square's motion to dismiss the First Amended Complaint, concluding that "California case law requires the Court to grant Square's motion to dismiss because Plaintiff has not sufficiently pleaded statutory standing under the Unruh Act."  ECF No. 38 at 7 (citing Angelucci v. Century Supper Club, 41 Cal. 4th 160, 170 (2007); Surrey v. TrueBeginnings, LLC, 168 Cal. App. 4th 416–19 (2008).  The Court relied on Surrey for the proposition that under California law, "a person must tender the purchase price for a business's services or products in order to have standing to sue it [under the Unruh Act] for alleged discriminatory practices relating thereto." Surrey, 168 Cal. App. 4th at 416.  Because White did not "allege[] that he attempted to subscribe to Square's services," but instead "merely allege[d] that 'became aware of' Square's policy and 'was then dissuaded from seeking to become a [Square] customer,'" the Court held that White did not have statutory standing to sue Square under the Unruh Act.  ECF No. 38 at 6, 8.

The SAC does not remedy this failure.  While the SAC adds additional detail regarding the various actions White undertook, which allegedly evidence his "strong, definite and specific intent to attempt to . . . become a [Square] subscriber," ECF No. 39 ¶ 19; see also id. ¶¶ 11–20, the SAC still fails to allege that White "tender[ed] the purchase price for [Square's] services or products." Surrey, 168 Cal. App. 4th at 416.  Accordingly, White lacks statutory standing under the Unruh

Act.

Rather than argue that the SAC contains sufficient new allegations such that White has standing under Surrey and Angelucci, White's Opposition instead makes several novel legal arguments, which were not previously raised in the briefing regarding Square's first motion to dismiss. See ECF No. 49. None of these arguments have merit.

First, White asserts that "the futile gesture rule precludes [Square's] No Click/No Standing Defense." ECF No. 49 at 9 (citing Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 366 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.")). However, as Square notes, "the futile gesture doctrine is a creature of federal law that has been applied to some federal antidiscrimination statutes." ECF No. 52 at 4. White does not cite any California authority for the proposition that the "futile gesture rule" should be applied to California's Unruh Act. Indeed, two of the federal cases cited by White, Arnold v. United Artists Theatre Circuit, Inc., 866 F. Supp. 433, 434 (N.D. Cal. 1994) and Botosan v. Paul McNally Realty, 216 F.3d 827 (9th Cir. 2000), have been explicitly rejected by the California Court of Appeal in Reycraft v. Lee, 177 Cal. App. 4th 1211, 1227 (2009) ("[W]e disagree with the federal district court's analysis in Arnold and would have denied standing under section 54.3 to the plaintiffs in that case."); id. ("We also reject plaintiff's reliance on the Ninth Circuit's decision in Botason.").[1] As Square aptly argues, "[t]he fact that some federal anti-discrimination statutes may be found to have a different or more lenient [statutory] standing requirement does nothing to alter [statutory standing requirements under] California['s] Unruh Act law," as set forth in Surrey and Angelucci. See Midpeninsula Citizens for Fair Housing v. Westwood Investors, 221 Cal. App. 3d 1377, 1385 ("The [U.S.] Supreme

---

[1] White cites Nat'l Federation of Blind v. Target Corp., 582 F. Supp. 2d 1185, 1194 (N.D. Cal. 2007) for the proposition that the "futile gesture rule was held to confer § 52 UL standing." ECF No. 49 at 10. This is not true. Nat'l Federation of Blind held that "putative class members who have been deterred from shopping at Target altogether have standing to proceed on their ADA claims" because "class members need not have engaged in a 'futile gesture' to gain access to the store when they knew that it would likely be inaccessible." Id.

1  Court's interpretation of a federal statute's standing requirements does not determine the scope of

2  standing provided by a California statute.").

3        Second, White argues that the California Court of Appeal's decision in <u>Hutson v. Owl

4  Drug Co.</u>, 79 Cal. App. 390, 391–92 (1926) provides support for holding that he has standing

5  under the Unruh Act.  ECF No. 49 at 19.  However, <u>Hutson</u> involved a black woman who was

6  refused service at a soda fountain, called a racial epithet, and then physically assaulted.  79 Cal.

7  App. at 391–92.  By contrast, White has not even attempted to obtain services from Square.

8  Similarly, White's citation of <u>Rolon v. Kulwitzky</u>, 153 Cal. App. 3d 289, 292 (1984) does not alter

9  the Court's conclusion because in that case "[p]laintiffs, two lesbian women, were <u>refused service</u>

10 in a semiprivate booth at a restaurant owned and operated by defendant."  (emphasis added).

11 Here, no such refusal of service has occurred yet. [2]

12       Ultimately, the Court finds that California case law continues to require the Court to grant

13 Square's motion to dismiss the SAC because White has not sufficiently pleaded statutory standing

14 under the Unruh Act.  <u>Angelucci</u>, 41 Cal. 4th at 170; <u>Surrey</u>, 168 Cal. App. 4th at 416–19.

**CONCLUSION**

16       Square's motion to dismiss the SAC is granted.  Because the Court has already given

17 White an opportunity to amend the complaint to remedy his lack of statutory standing, the Court

18 / / /

19 / / /

20 / / /

---

[2] <u>Scaduto v. Esmailzadeh</u> also provides no support for White's argument that he has statutory standing under the Unruh Act.  No. 07-cv-4069, 2007 WL 8435679 (C.D. Cal. Aug. 9, 2007).  In <u>Scaduto</u>, the district court found that plaintiffs had standing to pursue Unruh Act discrimination claims based on "a threatened, but not yet realized" act of housing discrimination. <u>Id.</u> at *8.  While the plaintiffs had not yet been evicted, the landlord had filed "Ellis Act eviction notices." <u>Id.</u> at *2.  In such circumstances, the court held that Plaintiff's need not wait until they are actually evicted before bringing suit, noting that "Defendants have not presented the Court with any authority for the proposition that a threatened discriminatory act such as that involved here is insufficient to confer standing under the Unruh Civil Rights Act." <u>Id.</u> at *8.  <u>Scaduto</u>, however, did not discuss <u>Surrey</u> or <u>Angelucci</u>.  The court finds those two cases to be far more persuasive because they arose, as did this case, in the context of a consumer's desire to purchase a product, as opposed to <u>Scaduto</u>, which involved housing discrimination, which had allegedly begun, but had yet to been completed.

concludes that further amendment would be futile.  Accordingly, the Court dismisses the SAC with prejudice.

IT IS SO ORDERED.

Dated:  September 14, 2016

_____
JON S. TIGAR
United States District Judge