UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. WHITE,<br><br>        Plaintiff,<br><br>    v.<br><br>SQUARE, INC.,<br><br>        Defendant. | Case No. 15-cv-04539-JST<br><br>**ORDER DENYING MOTION FOR NEW TRIAL**<br><br>Re: ECF No. 61 |

Plaintiff Robert E. White brought a purported class action against Defendant Square, Inc. ("Square"), alleging that Square violates the California Unruh Civil Rights Act by prohibiting certain types of businesses from using its services. The Court entered judgment in favor of Square after granting its motion to dismiss White's second amended complaint and denying White's request for leave to file a motion for reconsideration. ECF Nos. 54, 58, 60. White filed the instant motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). ECF No. 61. The Court will deny the motion.

## I. BACKGROUND

Square provides a service that enables individuals and businesses "to accept electronic payments without themselves directly opening up a merchant account with any Visa or MasterCard member bank." ECF No. 39 ¶ 5. White is the principal of a law firm and "actively practices bankruptcy law on behalf of his creditor clients." Id. ¶ 1. White also "is a personal friend and business colleague of Jeremy Katz, a member of the State Bar and a partner in shierkatz, RLLP." ECF No. 20 ¶ 8. Shierkatz is the plaintiff in the related case of shierkatz RLLP v. Square, Inc., No. 15-cv-02202-JST (N.D. Cal.) (filed on May 15, 2015).

White "read this District Court's file in the [shierkatz case] and thereby became aware of" Section 6 of Square's Seller Agreement. ECF No. 20 ¶ 9. As of December 21, 2015, Section 6 of

the Square Seller Agreement provided that "[b]y creating a Square Account, you . . . confirm that you will not accept payments in connection with the following businesses or business activities: . . . (28) bankruptcy attorneys or collection agencies engaged in the collection of debt." ECF No. 39 ¶ 6.  After reading this portion of Square's Seller Agreement, White "was . . . dissuaded from seeking to become a [Square] customer given the fact his law practice area is similar to that of [shierkatz RLLP] and, as such, [White's law firm] falls within Category 28 of" Section 6.  ECF No. 22 ¶ 9.  White then "formed the strong, definite and specific intent to attempt to have [his law firm] become . . . a [Square] subscriber without [his law firm's] ever once submitting itself to [Square's alleged misconduct]."  ECF No. 39 ¶ 10.  Evidencing this intent, White alleges that he "obtain[ed] and then carefully review[ed] portions of the extensive PACER record in shierkatz RLLP v. Square, Inc.," "personally visit[ed] Square['s] Website," refused to "click[] the link marked 'Continue' on Square['s] Website," "employ[ed] legal counsel to investigate [White's] bringing legal action against [Square]," "instruct[ed] said legal counsel to sue [Square]," "continuously visit[ed] [Square['s] website beginning on January 1, 2016, and on each calendar day thereafter," and "communicat[ed] a formal demand on [Square] that it . . . immediately and permanently agree to cease and desist from violating [his] Unruh Law civil rights to be free from . . . occupational discrimination."  Id. ¶¶ 11-12, 14-16, 18, 20.

On October 1, 2015, White filed this putative class action against Square, raising a single claim under California's Unruh Civil Rights Act.  ECF No. 1.  On December 21, 2015, White filed a First Amended Complaint ("FAC").  ECF No. 20.  The Court granted Square's motion to dismiss the FAC on April 19, 2016.  ECF No. 38.  The Court reasoned that under California law, "a person must tender the purchase price for a business's services or products in order to have standing to sue it [under the Unruh Act] for alleged discriminatory practices relating thereto."  Id. at 5 (quoting Surrey v. TrueBeginnings, LLC, 168 Cal. App. 4th 414, 416 (2008)).  By "not alleg[ing] that he attempted to subscribe to Square's services," White thus "failed to allege statutory standing under the Unruh Act."  Id. at 5-6.  Subsequently, White filed a Second Amended Complaint on April 29, 2016.  ECF No. 39.  The Court granted Square's motion to dismiss the SAC on September 14, 2016.  ECF No. 54.  The Court found that though the SAC

"add[ed] additional detail regarding the various actions White undertook, which allegedly evidence his strong, definite and specific intent to attempt to . . . become a [Square] subscriber," it "still fail[ed] to allege that White tender[ed] the purchase price for [Square's] services or products." Id. at 5 (internal quotation marks omitted). As such, the Court again concluded that "White lack[ed] statutory standing under the Unruh Act." Id. at 5-6. Judgment was entered on September 26, 2016. ECF No. 60. On the same day, White filed a motion for new trial, ECF No. 61, which motion the Court now considers.

## II.  LEGAL STANDARD

Courts have held that a motion for new trial is only proper where the claims subject to the motion were first adjudicated in a trial. See, e.g., Merrill v. County of Madera, 389 Fed. App'x 613, 615 (9th Cir. 2010) ("[A] Rule 59(a) motion for new trial is not available on claims or causes of actions for which Plaintiffs never received a trial."); United States v. Shiozawa, No. 5:12-cv-02025-LHK, 2014 WL 522001, at *1 (N.D. Cal. Jan. 2, 2014) (finding the motion for new trial under Rule 59 was not proper because there was no trial); Harper v. Costa, No. CIV S-07-2149, 2010 WL 144427, at *1 (E.D. Cal. Jan. 11, 2010) (finding that, where the plaintiff moved for new trial upon the grant of defendants' motion to dismiss, the Rule 59(a) motion was not appropriate because no trial took place). White's motion for new trial under Federal Rule of Civil Procedure 59(a) is not a proper method for challenging the Court's September 14, 2016 order because there has been no trial.

As such, the Court construes White's motion as a "motion to alter or amend a judgment" under Federal Rule of Civil Procedure 59(e)[1] or a motion to be "relieve[d] . . . from a final judgment, order, or proceeding" under Federal Rule of Civil Procedure 60(b). See Shiozawa, 2014 WL 522001, at *1 (construing the plaintiff's Rule 59(a) motion as a Rule 59(e) motion or Rule 60(b) motion); Harper, 2010 WL 144427, at *1 (construing the plaintiff's Rule 59(a) motion as a Rule 59(e) motion).

Under Rule 59(e), "[r]econsideration is appropriate if the district court (1) is presented with

---

[1] The Court notes that White satisfies the requirement that a Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment."

3

newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, Multnomah Cty, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). "Rule 60(b) provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." Id. (internal quotation marks omitted). A party seeking reconsideration under Rule 59 and Rule 60 must do more than rehash arguments or recapitulate cases already considered by the court. See Young v. Peery, 163 F. Supp. 3d 751, 753 (N.D. Cal. Nov. 24, 2015); United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. Mar. 13, 2001).

### III. DISCUSSION

Here, White seeks reconsideration based on newly discovered evidence. ECF No. 61. Accordingly, he "must make three showings": the evidence must be "newly discovered," the movant must have exercised "due diligence" to discover the evidence, and the evidence "must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987).[2]

Coastal Transfer is instructive. In that case, the court found that the movant failed to meet all three criteria. Id. at 212. Coastal Transfer Company ("Coastal") initiated the action against Toyota, alleging an antitrust violation when Toyota discharged Coastal and hired Direct Delivery Service to deliver parts to Toyota's dealers. Id. at 209. Following summary judgment in favor of Toyota and entry of final judgment, Coastal argued that it "only recently learned that its expert . . . had erred in his original analysis of data" when he had advised Coastal that Direct Delivery Service's illegal shipment rates took place in an incorrect year. Id. at 210. The court concluded that the expert's revised testimony was not newly discovered because "the evidence upon which the expert's testimony was based had been in Coastal's possession since the start of litigation." Id.

---

[2] The test is the same under either Rule 59 or Rule 60(b)(2). Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990).

at 212. As to the due diligence inquiry, the court found that "Coastal did not use due diligence to discover its expert's error," as it should have been "apparent" that the expert analyzed data from the wrong year. Id. Finally, the expert testimony "would not have propelled Coastal over the hurdle of summary judgment." Id. In so concluding, the court reasoned that the revised testimony alleged only "illegal" rates, which fell "far short" of demonstrating "below-cost" pricing for establishing an antitrust violation. Id.

Here, White alleges that the "new evidence," a September 19, 2016 letter from Square's counsel to his counsel, "reveals, for the first time, Square's general legal position that any bankruptcy lawyer signing up for Square's service in order to facilitate the practice of bankruptcy law would expose himself to a claim back of promissory fraud from Square." ECF No. 61 at 2-3. The letter, "directly addressing shierkatz, RLLP's situation," was written to address "the theory that Square's terms of services have supposedly been revised to allow payment processing for bankruptcy legal services." Id. at 2; ECF No. 61-1 at 15. In the letter, Square's counsel explains that "[t]here has been no such revision" and that "Square's terms of service continue to require subscribers to agree that they will not use the service to process payments because of the economic risk associated with those transactions." ECF No. 61-1 at 15. "[S]igning up for Square's service with the intent to violate the applicable terms of service would [therefore] be fraudulent." Id.

Though White did not fail to exercise due diligence in raising the issue of the September 19, 2016 letter one week after his counsel received it, he fails to meet the other two criteria of the test. First, the evidence is not newly discovered. In both the FAC and SAC, White alleges that Square's Seller Agreement states, "By creating a Square Account, you . . . confirm that you will not accept payments in connection with . . . (28) bankruptcy attorneys or collection agencies engaged in the collection of debt." ECF No. 20 ¶ 6; ECF No. 39 ¶ 6. The September 19, 2016 letter merely confirms that "[t]here has been no . . . revision" to this requirement. ECF No. 61-1 at 15. As such, Square's terms of service—which form the basis of the letter—have been in White's possession since the start of litigation, similar to how "the evidence upon which the expert's testimony was based had been in Coastal's possession since the start of litigation." See Coastal Transfer, 833 F.2d at 212. In addition, Square notes correctly that "the legal proposition

1  referenced in the letter is long-established California law regarding promissory fraud." ECF No.
2  63 at 4 (citing Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)). Accordingly, the Court
3  concludes that neither the facts nor the legal position raised by the letter constitutes newly
4  discovered evidence.

5      Finally, the evidence raised by the letter is not of "such magnitude that production of it
6  earlier would have been likely to change the disposition of the case." See Coastal Transfer, 833
7  F.2d at 211. In Coastal Transfer, the revised expert testimony "would not have propelled Coastal
8  over the hurdle of summary judgment." Id. at 212. Here, the evidence would not have changed
9  the Court's decision to grant Square's motion to dismiss the SAC. The Court has made clear in its
10 previous orders that White has failed to allege statutory standing under the Unruh Act by not
11 attempting to subscribe to Square's services. See ECF No. 38 at 5-6 (order granting motion to
12 dismiss FAC due to lack of standing); ECF No. 54 at 5 (order granting motion to dismiss SAC due
13 to lack of standing). The letter— clarifying that the terms remain unchanged and detailing
14 Square's legal position should shierkatz RLLP subscribe for Square's service with the intent to
15 violate the terms—falls well short of demonstrating White's required "tender [of] the purchase
16 price for a business's services or products in order to have standing to sue." See ECF No. 38 at 5
17 (quoting Surrey, 168 Cal. App. 4th at 416)).

18     Further, the Court dismisses White's argument that the new "facts would and should
19 change the result because Square cannot enforceably demand . . . something illegal as a condition
20 precedent to . . . obtaining standing." ECF No. 64 at 2. First, White mischaracterizes the facts, as
21 Square is not "demanding" anything illegal. Additionally, Square is not making any demand on
22 White, as the letter addresses the plaintiff in the shierkatz RLLP v. Square, Inc. case. See ECF
23 No. 61-1 at 15. Second, White's argument does not change the fact that he has not met the tender
24 requirement. Finally, White cites to Scaduto v. Esmailzadeh in his reply brief, but the Court had
25 already concluded in its previous order that the case "provides no support for White's argument
26 that he has statutory standing under the Unruh Act." ECF No. 54 at 7 n.2 (citing No. 07-cv-4069,
27 2007 WL 8435679 (C.D. Cal. Aug. 9, 2007)). The Court found Scaduto unpersuasive because of
28 the factual distinction between the "housing discrimination" situation in that case and "the context

6

[here] of a consumer's desire to purchase a product." Id.  White's reliance on Scaduto is misguided because he must do more than rehash arguments and recapitulate cases already considered.  See Young, 163 F. Supp. 3d at 753; Westlands, 134 F. Supp. 2d at 1131.

Because the evidence is not newly discovered and would not have changed the Court's decision to grant Square's motion to dismiss, White fails to "make [the] three showings" required for reconsideration based on newly discovered evidence.  See Coastal Transfer, 833 F.2d at 211.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for new trial.

IT IS SO ORDERED.

Dated: November 9, 2016

_____
JON S. TIGAR
United States District Judge